UNITED STATES, Appellee

v

HARRY B. BRAND, Chief Warrant Officer (W–2),
U. S. Air Force, Appellant

10 USCMA 437, 28 CMR 3

No. 12,685

Decided May 22, 1959

*Lieutenant Colonel Robert O. Rollman* argued the cause for Appellant,

Accused. With him on the brief were *Lieutenant Colonel Sam F. Carter* and *Lieutenant Colonel James L. Kilgore.*

*Lieutenant Colonel James R. Thorn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel Francis R. Coogan.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of four violations of the Uniform Code of Military Justice, Article 134, 10 USC § 934, in that he, on four separate occasions, made and uttered checks and thereafter wrongfully and dishonorably failed to place or maintain sufficient funds for their payment in the bank upon which they were drawn. Following affirmance of the findings and sentence by a board of review, The Judge Advocate General of the Air Force certified to this Court the following question:

"Was the Board of Review correct in finding the evidence legally sufficient to establish the required element of dishonorable failure to maintain sufficient funds in the accused's checking account, considering the showing that he offered to redeem the checks prior to their actual dishonor by the drawee bank?"

The accused's petition for review, based upon specific allegations of error, was granted by this Court on March 3, 1959. However, our disposition of the certified issue eliminates the necessity for any discussion with respect to the matters set forth in the petition.

Uncontradicted evidence establishes that the accused, a warrant officer stationed at Komaki Air Base, Japan, made and uttered four checks, drawn on the National Bank of Fort Sam Houston, San Antonio, Texas, whose face value totaled $90.00. The checks were cashed at the Komaki Air Base Airmen's Open Mess on February 8, 11 and 12, 1958. It is equally undisputed that the accused visited the Open Mess on February 17, 1958; informed the custodian that the checks which he had negotiated would be returned for insufficient funds; and offered to redeem them immediately. He tendered to the custodian the sum of $90.00. The custodian had already deposited the checks for collection, and, for various reasons, refused to accept the sum tendered. He "recommended when the checks did come through [i.e., returned by the bank] . . . they could be redeemed then."

The offer of redemption accorded with a practice followed at Komaki Air Base by which officers and airmen were permitted to redeem returned unpaid checks without reference of the matter to their commanding officers. Unfortunately for the accused, a new policy was placed in effect shortly after he drew the checks in question. Upon their dishonor on February 21, 1958, the checks were returned through normal banking channels to the Open Mess and forwarded to his commanding officer.

In order to impose criminal liability, an accused's failure to deposit or maintain a sufficient bank balance for the payment of checks previously drawn upon his account must be *dishonorable.* United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Lightfoot, 7 USCMA 686, 23 CMR 150. That term involves *demonstrable bad faith or gross indifference* on the part of the accused and, in the analogous offense of dishonorable neglect to discharge pecuniary obligations, is characterized by deceit, evasion, false promises, denial of indebtedness, or other distinctly culpable circumstances. United States v Downard, supra; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 715.

Considered as a whole, the evidence adduced in this case, as a matter of law, does not establish that the accused was grossly indifferent or acted in bad faith. See United States v O'Neal, 1 USCMA 138, 2 CMR 44. The liberal

**438**

check redemption policy at Komaki, the tender to the custodian of a sum equivalent to the face value of the checks, and the latter's assurance that the instruments could be redeemed upon their return, clearly explain accused's failure to deposit funds in the National Bank of Fort Sam Houston prior to its dishonor of his checks. Certainly, he cannot be held criminally accountable for the failure to maintain a proper bank balance in the face of the custodian's assurance that he would be permitted to repurchase the checks upon their return.

Accordingly, the certified question is answered in the negative. The decision of the board of review is reversed, and the Charge and its specifications are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

The court-martial, convening authority, and board of review have considered the evidence in this case and each independently concluded that the facts shown by the prosecution established the guilt of the accused beyond a reasonable doubt. Accordingly, to determine insufficiency at this level, we are required to find that the yardstick used by the finders of fact was inappropriate as a matter of law. When that situation exists I prefer to point out specifically wherein I believe the measuring rod was short.

The Government elected to prosecute the accused on a theory that he wrongfully and dishonorably failed to place funds on deposit or maintain a balance in the bank sufficient to pay the checks upon their presentment. No attempt was made to allege or prove an intent to deceive in uttering the checks. Accordingly, the problem narrows to a determination of whether accused's post-issuance conduct was dishonorable. This is made quite clear by the letter addressed to him which stated the checks would be returned by the Open Mess upon payment of their face value. Any fraud or deceit in cashing the checks becomes relevant only for the purpose of casting color on accused's subsequent conduct. This was the view taken by the board of review but my difficulty arises because I find nothing done by accused thereafter which can be construed to impute dishonor.

I do not go as far as my associates seem to proceed, for I take the position that the tender of the money to redeem the checks is a factor favorable to accused, but it does not bar culpable failures thereafter. To me it offers a starting point for appraising his criminality but it neither satisfied the debt nor permitted the accused to use devious and dishonorable means to avoid paying the obligation. When his first offer to redeem was refused—and for a valid reason—accused was still obliged to remit the money to the bank or redeem the checks when they were returned. Without regard to the niceties of civil law concerning negotiable instruments, I consider that when he tendered the money and payment was refused he did not free himself from the military requirement proscribing dishonorable failure to satisfy his obligations. Certainly he did not change any debtor-creditor relationship which may have been created and we should assess his conduct at least by the test we have prescribed for failure to pay a debt.

In United States v Kirksey, 6 USCMA 556, 20 CMR 272, we held that failure to liquidate a debt was not an offense unless the conduct of the accused in failing to pay was bottomed on willful evasion, bad faith, false promises, or some similar type of culpable motivation. Assuming the debt was fraudulently contracted, it occurs to me that in the case at bar the Government, having relied on dishonorable failure after the fraud, was required to prove some criminality of the sort mentioned above and it is this deficiency which is fatal to the findings. Here the accused offered to redeem the checks on February 17, 1958, and it was not until March 8, 1958, that he was notified the instruments had been returned and should be redeemed. Ten days there-

after charges were preferred against him. While it is true he did not make full restitution for the checks until June 3, 1958, the offenses of which he stood accused had to be committed, if at all, prior to the time the charges were preferred. If I take the offer to redeem as a starting time, there is approximately one month in which the accused failed to deposit the money with the bank, redeem the checks, acknowledge receipt of the demand, or contact the mess. And, of course, no dishonor can be imputed to accused for a large part of this period, for he was told it would be permissible to redeem the checks upon their return, which was the accepted practice at his base. If I use the time of notice of dishonor, there is but ten days. There is no showing of any other fact subsequent to these times from which culpability might be inferred and, standing alone, failure to satisfy the obligations within a given time, unless the period is unconscionable, is not sufficient for that purpose. A showing of unwarranted refusal to pay, any receipt of income, wasting of funds, unnecessary expenditures, or available sources of revenue from which it could be inferred reasonably that accused had the ability to pay is singularly missing in the testimony. The only items upon which the Government can rely to sustain the findings are the failure to forward the money or redeem the checks within the above-mentioned periods and those are not sufficient to support a finding of dishonorable conduct.

For the foregoing reasons, I concur with my associates in their disposition of the case.