UNITED STATES, Appellee

v

LESLIE F. STRATTON, Sergeant First Class, U. S. Army, Appellant

11 USCMA 152, 28 CMR 376

No. 13,317

Decided January 15, 1960

*Lieutenant Colonel Ralph Herrod* argued the cause for Appellant, Accused.

*First Lieutenant Avram G. Hammer* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of an eleven-day unauthorized absence and two specifications of issuing bad checks with an intent to deceive, in violation of Articles 86 and 134, respectively,

Uniform Code of Military Justice, 10 USC §§ 886, 934. He challenges the validity of his conviction because of two alleged errors in the law officer's instructions.

First, the accused contends he was prejudiced by the failure of the law officer to instruct the court-martial it could, on the basis of the evidence, find him guilty of the lesser offense of issuing a worthless check without intent to deceive, but thereafter dishonorably failing to place sufficient funds on deposit for payment of the check on presentment. See United States v Downard, 6 USCMA 538, 20 CMR 254. That contention is not supported by the evidence. At trial the making and issuance of the checks were conceded by the accused. He also admitted that after issuance of the checks he made no effort whatever to deposit funds for payment because he believed that he always had sufficient funds to cover the checks. The only issue raised by the evidence was whether, at the time of issuance of the checks, the accused believed that about a month before, his father had mailed $285 in cash to the main office of the bank in San Francisco, pursuant to a telephone request by the accused that he take the money with a prepared deposit slip from a jewelry box in his home in Fresno, California. The accused admitted he may have been informed by the head cashier of the Base Area Exchange two days before he negotiated the checks in issue that an earlier check given to the Exchange was returned by the bank for insufficient funds and he promised to make it good. However, he maintained he did not remember the matter when he issued the checks because he was upset.

According to the evidence there were only two alternatives for the court-martial to consider. If the █ court accepted the defense explanation for the accused's conduct, the accused was innocent of all wrong. If it rejected the defense contention and accepted the prosecution's version of the transactions, the accused was guilty as charged. The evidence raised no issue as to the commission of the lesser offense of dishonorably failing to place sufficient

funds on deposit for payment of the checks on presentment. Consequently, the law officer was correct in limiting his instructions to the offenses charged. United States v Williams, 9 USCMA 3, 25 CMR 265, 267.

The other part of the disputed instructions deals with the law officer's definition of the elements of the bad check offenses. The law officer set out the matters which the court-martial was required to find in order to return a verdict of guilty. The fourth element was to the effect that the court must be satisfied beyond a reasonable doubt that after the making and uttering of the check, the accused "wrongfully and dishonorably failed" to provide sufficient funds for payment on presentment. Following the enumeration of the elements of the offense, he defined "uttered" and "dishonorably." His description of the latter term is as follows:

"The term 'dishonorably' as used in the specifications refers to conduct that is characterized by fraud, deceit, dishonesty, evasion, or false or fraudulent promises. The term 'dishonorably' further as used in the specifications imports that the failure of the accused to maintain sufficient funds in the American Trust Company, Marina Branch, for payment of such checks upon their presentment for payment was characterized by fraud, deceit, willful evasion, bad faith, gross indifference, or false promise. A mere negligent failure to maintain sufficient funds in a bank for payment of checks drawn thereon is not an offense punishable under the Uniform Code of Military Justice."

Turning to the evidence, the law officer referred to the testimony by the defense which tended to show that the accused mistakenly believed he had sufficient funds on deposit when he wrote the checks. Instructing on the effect of this belief, he said:

"The defense has introduced evidence to show that at the time of the alleged offenses of making and uttering the worthless checks the accused was under the mistaken belief that

154

he had sufficient monies in said bank to cover payment of the checks. With respect to this evidence, the court is advised that if the accused was laboring under such mistake, and if his mistake was honest and not the result of gross indifference, he cannot be found guilty of making and uttering a worthless check, for it is essential to a conviction for this offense that the prosecution prove beyond a reasonable doubt the accused had dishonorably failed to have sufficient funds in said bank for payment of such checks upon their presentment for payment. The burden is on the prosecution to establish the accused's guilt by legal and competent evidence, beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not under the mistaken belief that he had sufficient funds in said bank to cover the payment of the checks, and likewise satisfied beyond a reasonable doubt that his mistaken belief was the result of gross indifference on his part, you must acquit the accused."

At the end of the instructions the law officer asked counsel if they had any objection or request not previously made, as regards the instructions. Trial counsel requested a side-bar conference. When that was terminated the law officer further instructed the court-martial as follows:

"LO: At the point in my instructions where I instructed the court with respect to the accused suffering under the honest mistake that he had sufficient funds in the bank to cover his checks, I'd like to specifically point out at this time that that instruction pertains to Specifications 1 and 2 of Charge II, pertains to the Specification and Charge III—it pertains to Specifications 1 and 2 under the Additional Charge. Is that understood by the court?

"(The court responded in the affirmative)

"LO: In other words, the mistake of honest mistake applies to all these charges and specifications, except the one for which the accused has entered a plea of guilty.

"Was there any response to my query of counsel?

"TC: I have nothing more, sir.

"DC: Defense has nothing more, sir."

Military law recognizes two kinds of bad check offenses: one requires both a specific intent to deceive at the time of the issuance of the check and a dishonorable failure to maintain or provide sufficient funds for payment on presentment of the checks; the other offense presupposes, or disregards, the propriety of the issuance of the check—it is concerned only with dishonor in regard to nonpayment of the check. United States v Downard, supra; United States v Lightfoot, 7 USCMA 686, 23 CMR 150. In most cases, both elements of the principal offense, intent to deceive and dishonor, are established by evidence of falsity, fraud or deceit. However, a significant difference exists in a situation in which there is gross indifference. Negligence, simple or gross, is the absence of conscious thought in regard to a particular act, and is measured in terms of what a reasonable person would do in like circumstances. It is, therefore, altogether different from the subjective state of mind required for an intent to deceive. Consequently, even gross negligence or indifference does not establish an intent to deceive. Hence, an honest, albeit unreasonable, belief in the existence of an nonexistent fact negates the presence of an intent to deceive. But this is not true as to dishonor. We pointed out in the *Downard* case that dishonor in failing to provide for payment of a check on presentment, may be established not merely by some sort of bad faith but also by "gross indifference." Dishonor may be shown, therefore, not only by the specific mental state of the accused, but also by his failure to meet the objective norms of a reasonable person. However honest the accused may be in his belief in the existence of a fact, he is nonetheless guilty of dishonor if his belief is the result of gross indifference which results in nonpayment.

Bearing in mind the difference be-

tween intent in issuance and dishonor in payment, the first and ▮ the last of the quoted instructions are correct. In fact, the record of trial shows that the first instruction was expressly requested by defense counsel on the authority of the *Downard* case. If there is error, therefore, it must be found in the middle instruction. That instruction is not a simple one. The sentences are perhaps too long for oral statement to court members, but the sense is apparent, especially when considered with the preceding instructions on intent and dishonor.

It is contended that, under the instruction, the court-martial could reasonably conclude that it could find the accused guilty upon one of two alternatives: (1) That he entertained a specific intent to deceive when he issued the checks, or, (2) that while the accused had an honest belief his father had mailed $285 to the bank for deposit to his account, this belief at the time of issuance of the checks was the result of gross indifference on his part. Had the instruction stopped at the words "uttering a worthless check," which appear at the end of the phrase after the first reference to "gross indifference," there would be substantial merit in the claim of error. United States v Walters, 10 USCMA 598, 28 CMR 164. However, the sentence does not end at that point; it continues with a long statement which qualifies the first part of the sentence and which limits the whole to the element of dishonor. So limited, the instruction is directly in line with the earlier instruction and is correct. The second reference to "gross indifference" in the final sentence is more ambiguous. Again, however, considered with the earlier *differentiation* between intent at the time of issuance and dishonor as to payment, its meaning becomes clear. The first part of the sentence refers to intent; the second part refers to dishonor.

We are satisfied the instructions as a whole do not present a fair risk that the court-martial was misled into the belief it could find the accused guilty of the offenses charged if it found beyond a reasonable doubt that the ac-

cused had no intent to deceive but was laboring under an honest belief as to the state of his account which resulted from gross indifference upon his part. Accordingly, we affirm the decision of the board of review.

Judge LATIMER concurs in the result.

FERGUSON, Judge (dissenting):

I dissent.

In my opinion, the law officer erred to the accused's prejudice in failing *sua sponte* to instruct the court-martial upon the elements of a reasonably raised lesser included offense and in limiting the accused's defense of mistake of fact to those errors which did not result from gross indifference.

Tried upon charges of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, two specifications of larceny by check, in violation of Code, supra, Article 121, 10 USC § 921, and three specifications of wrongfully making worthless checks with intent to deceive, in violation of Code, supra, Article 134, 10 USC § 934, the accused pleaded guilty to the unauthorized absence and not guilty to the other offenses. He was found guilty of absence without leave and of writing two bad checks with intent to deceive.

The prosecution introduced evidence tending to establish that the accused negotiated two worthless checks on September 27, 1958. On September 29, 1958, he negotiated an additional check. On October 4, 1958, he negotiated a check for $12.00 to the Bay Area Exchange and another check to a San Francisco Motel for $8.00. Each check was signed with his proper name and included his correct military address. All of the checks were returned by his bank unpaid, as his account was overdrawn.

The accused's father testified for the defense. He stated that he, at the request of the accused, had mailed a cash deposit of $285.00 to accused's bank on September 4, 1958. The deposit was apparently not received by the bank, and he was engaged in having the Post Office Department trace the letter in which the money was enclosed. Accused

appeared as a witness on his own behalf and testified that he thought all of the checks which he wrote would be paid at the time he uttered them. He corroborated his father's testimony insofar as was possible for him to do so, and declared, on cross-examination, that he did not recall having a telephone conversation with a Mrs. Tanner, "a woman from the Bay Area Exchange," on October 1, 1958, in which he was informed that one of his checks had been returned and in which he stated that he would redeem the instrument on October 2. He also testified that he did not remember a second telephone conversation with the same person on October 2, 1958, in which he informed her he would send someone over with the money to buy back the check. He was equally unable to recollect a third conversation with Mrs. Tanner on October 6. Accused did not deny that the conversations occurred, but explained he could not recall them because he was in "a nervous and upset state." He stated, "I couldn't honestly make up my mind whether to leave the service or to go on and finish my enlistment, even though my doctor had recommended that I had to do one or the other or I'd continually be in a state." It was then developed that, at the time of the telephone calls, he had just returned to his organization "from psychiatric care . . . there's a lot of things I just don't remember." Questions by members of the court established that accused had been suffering from a nervous condition for approximately eighteen to twenty months; had his second breakdown in August 1958, for which he was hospitalized; and that he had received "outpatient care from civilian doctors and several here at the psychiatric clinic."

The defense ended its case by adducing evidence of accused's good character and approximately eleven years of prior honorable service. It was also shown that he had made restitution for all of the checks involved.

In rebuttal, the trial counsel established that accused was examined by a qualified psychiatrist on November 10, 1958, and was found to be both responsible and capable. He then presented the testimony of Mrs. Ethel Tanner, Main Cashier, Bay Area Exchange. Mrs. Tanner called accused's organization on October 1, 1958. The person who answered the telephone stated that he was "Sergeant Stratton." This was her "only means of knowing that the individual" to whom she was speaking was the accused. She informed him his check had been returned for "insufficient funds." He stated he would be in on the following day.

Thereafter, Mrs. Tanner testified that Sergeant Stratton did not appear although she called him again on October 2 and October 6, 1958.

Following final arguments, the law officer instructed the members of the court-martial on the elements of the offense charged and wrongful appropriation as a lesser included offense of the larcenies. He did not advise them concerning any lesser included offense involved in the making of worthless checks with intent to deceive. However, he did inform the court-martial that an issue was raised by the evidence concerning accused's ignorance of the state of his bank account. In this respect, he stated:

"The defense has introduced evidence to show that at the time of the alleged offenses of making and uttering the worthless checks the accused was under the mistaken belief that he had sufficient monies in said bank to cover payment of the checks. With respect to this evidence, the court is advised that if the accused was laboring under such mistake, *and if his mistake was honest and not the result of gross indifference,* he cannot be found guilty of making and uttering a worthless check, for it is essential to a conviction for this offense that the prosecution prove beyond a reasonable doubt the accused had dishonorably failed to have sufficient funds in said bank for payment of such checks upon their presentment for payment. The burden is on the prosecution to establish the accused's guilt by legal and competent evidence, beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the ac-

**157**

cused was not under the mistaken belief that he had sufficient funds in said bank to cover the payment of the checks, and likewise satisfied beyond a reasonable doubt *that his mistaken belief was the result of gross indifference on his part, you must acquit the accused."* [Emphasis supplied.]

I am certain the evidence heretofore recited raises an issue in this record concerning the lesser included offense of wrongfully making a worthless check without intent to deceive and thereafter dishonorably failing to maintain sufficient funds on deposit to insure its payment, in violation of Code, supra, Article 134. The author of the principal opinion concludes that the lesser offense was not in issue, as the accused conceded he had made and uttered the checks in question but made no covering deposits, as he believed his father had forwarded sufficient funds to the bank. In my opinion, this ignores the fact that accused made no effort to ascertain from his father whether he had in fact mailed the deposit or whether the bank had in fact received the money. In United States v Downard, 6 USCMA 538, 20 CMR 254, we pointed out that the lesser offense here involved required that the accused's failure to deposit funds to cover his checks be the result of gross indifference on his part. The essence of Sergeant Stratton's testimony is that he called his father and directed him to deposit the sum of $285.00 in the bank. His father testified that he mailed this sum to the bank. Stratton admitted he made no effort to see if his father had in fact mailed the sum until the checks were returned and that he did not contact the bank to see if they had received the money. Moreover, from the Exchange cashier's testimony, it is apparent that, at the time he wrote the checks involved in the specifications before us, the accused was aware of the necessity for covering them. Under the circumstances, I am sure it is reasonable to characterize his failure to do so as resulting from gross indifference, and I would hold that the law officer was required to instruct on the elements of the lesser offense.

The second issue before us is whether the law officer correctly advised the members of the court-martial concerning the affirmative defense of mistake of fact. The Chief Judge argues that the instruction did not mislead the court members, for it was limited to the element of dishonorable failure to deposit funds to cover the checks involved. The difficulty which I find with that position is that the effect of accused's defense is so limited. As he apparently concedes, an issue is clearly raised concerning whether accused, at the time he made and uttered the checks in question, was operating under the honest belief that he had on deposit sufficient funds to afford payment of the checks in question. The principal effect of that mistake is to eliminate the subjective intent to deceive required for conviction of the offense charged, and to permit conviction solely on the basis of a grossly indifferent state of mind. United States v Rowan, 4 USCMA 430, 16 CMR 4; Manson, *Mistake as a Defense,* 27–100–6 Military Law Review 63, October 1959. As succinctly stated by the author of the mentioned article, at page 68:

". . . [W]here culpability is based upon a conscious intent or purpose to engage in certain conduct or to accomplish a certain result, an honest ignorance or mistake, no matter how unreasonable, which shows that the accused did not have that intent or purpose is a defense."

Thus, the law officer's error lies in restricting the effect of accused's mistake to the element of dishonor and preventing the members of the court-martial from considering it on the equally important question of whether he had an intent to deceive. A proper instruction would have been to the effect that evidence of accused's honest mistake should be considered on the issue of his intent at the time he made the checks in question and that, unless the members of the court-martial were of the opinion he possessed such an intent despite his claim of mistake, he was entitled to an acquittal. Following that advice, the court should have been instructed concerning the effect of mis-

take on the element of dishonor. Only when both guides were given would it be possible for the members to reach an informed decision. With the evidence in the state presented by this record, I am sure they did not. Accordingly, I believe reversal must follow.

I would reverse the decision of the board of review concerning the bad check offenses and authorize a rehearing on those delicts.