UNITED STATES, Appellee

v

FAY G. GROOM, Airman First Class, U. S. Air Force, Appellant

12 USCMA 11, 30 CMR 11

No. 14,208

Decided November 4, 1960

 

*Lieutenant Colonel Peter Portrum* argued the cause for Appellant, Accused. With him on the brief were *Colonel James L. Kilgore* and *Lieutenant Colonel Philip J. Williamson.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of three specifications of making and uttering checks and thereafter wrongfully and dishonorably failing to maintain sufficient funds in the proper bank for their payment. He was sentenced to bad-conduct discharge and reduction to the grade of basic airman. The convening authority approved the sentence. The supervisory authority took similar action but suspended the bad-conduct discharge with provision for automatic remission. The board of review affirmed, and we granted accused's petition for review on the issues whether the evidence was legally sufficient to support the findings of guilty and whether the trial counsel's final argument was prejudicially erroneous. Our disposition of the first question eliminates any necessity for deciding the second issue.

On November 12, 1959, the accused uttered a check to the Noncommissioned Officers' Club, Clinton-Sherman Air Force Base, in the amount of fifty dollars. On November 15, 1959, he cashed another check at the same place, in the amount of thirty dollars. Finally, on November 19, 1959, the accused drew and negotiated a third check at the Club, also in the amount of fifty dollars. The evidence does not reveal the purpose for which the checks were drawn. All the checks were signed by the accused and included the number of his Club Membership Card. They were directed to his active checking account in The First State Bank.

Mr. R. B. Hoover, President, The First State Bank, identified the checks involved as having been received for payment in his bank on various dates. On November 18, 1959, the check for fifty dollars, written on November 12, was dishonored because of insufficient funds in the accused's account. Similar action was taken with respect to the other two checks, but the dates on which payment was refused are not shown in the record.

On November 30, 1959, the accused came to the Noncommissioned Officers' Club and redeemed the returned check which he had written on November 12. On December 15, 1959, the accused redeemed the other two checks. Again, the record is silent concerning the dates on which the checks were actually returned to the Club and the circumstances surrounding any notification to the accused of their dishonor.

Accused's bank ledger card shows a still active account extending at least from October 1, 1959, through the date of his trial. During that period, deposits totalled $1,034.00, and thirty-three checks were paid in a gross amount of $1,031.90. The ledger card also depicts a not unusual pattern of

deposits followed by the payment of a series of checks which reduced accused's balance to a small sum. On November 18, 1959, the date on which the initial check was presented for payment, accused's balance was $2.20. While the dates of presentment of the other two checks *are not shown,* the largest balance thereafter reflected in accused's account is $52.20.

The Government contends that the foregoing facts permit an inference that the accused's failure to maintain a sufficient balance to pay the checks upon presentment was dishonorable. On the other hand, appellate defense counsel, conceding that the checks were negotiated by the accused and properly returned by the bank because of unavailability of sufficient funds to pay them, contend that the record is devoid of any basis for a finding that the failure to deposit an amount to cover each check was so characterized.

A dishonorable failure to maintain sufficient funds on deposit to cover previously drawn checks requires proof that the accused's nonfeasance was characterized by deceit, evasion, false promises, or other distinctly culpable circumstances. In short, the accused must be shown to have acted in bad faith or to have been grossly indifferent to the state of his bank account. United States v Brand, 10 USCMA 437, 28 CMR 3; United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Lightfoot, 7 USCMA 686, 23 CMR 150. Indeed, the term "dishonorable" involves a mental element closely allied to that of a specific criminal intent. United States v Downard, supra; United States v Daggett, 11 USCMA 681, 29 CMR 497.

Measuring the quantum of proof in this record by the standard of sufficiency in law, we must necessarily conclude that the evidence does not establish accused's conduct to be dishonorable. At the trial, the Government contented itself with proof that accused made and uttered the checks in question and that they were not paid by the bank. It made no effort to show the dates upon which the dishonored papers were returned to the Club or what period of time or effort was required in order to have the accused redeem them. In fact, their repurchase is shown to have occurred within 18 days to 30 days after the checks were written, and this period does not take into account the delay normally involved in the return of such items through banking channels. Indeed, so far as we know, the accused promptly paid off each check as it was received by the Club. Certainly, it does not appear that his action in this regard was dictated by the pressure of pending disciplinary action, for charges against him were not preferred and made known until March 1, 1960, three and one-half months after he reimbursed the Club for the last two checks. See concurring opinion of Judge Latimer, United States v Brand, supra, at page 440.

In short, we are completely unable to find any circumstances in this record which reflect a grossly indifferent attitude by the accused toward his obligation to maintain his bank account in a proper condition. To the contrary, the deposit ledger card reflects correct deposits and checking practices for the entire period, excepting only the week in which all three instruments were uttered. Summed up most favorably to the Government, the evidence does not go beyond establishing the fact that accused overdrew his account on three occasions and paid off the overdrafts on specified dates. Absent proof of other circumstances, these factors are insufficient in law to permit an inference that he *dishonorably* failed to maintain sufficient funds on deposit to cover the returned checks. United States v Brand, supra; United States v Downard, supra.

The decision of the board of review is reversed and the charges are ordered dismissed.

Chief Judge QUINN and Judge LATIMER concur.