UNITED STATES, Appellee

v

WILLIAM W. BULL, JR., Major, U. S. Air Force, Appellant

12 USCMA 514, 31 CMR 100

No. 14,972

November 17, 1961

*Captain Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph E. Krysakowski* and *Colonel James L. Kilgore*.

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker* and *Major James Taylor, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was arraigned upon, and pleaded not guilty to, eleven specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was found guilty of two specifications of wrongful appropriation, in violation of the same Article, and sentenced to be dismissed from the service. The convening authority approved the sentence but suspended its execution for six months, with provision for automatic remission at the end of that period. The board of review affirmed, and we granted accused's petition. The only issues which we need discuss relate to sufficiency of the evidence to support the findings of guilty and whether the proceedings were abated against accused as a result of his honorable discharge from the Air Force on June 30, 1961.

We may at once dispose of the question of the abatement of the proceedings. In United States v Speller, 8 USCMA 363, 24 CMR 173, and United States v Robertson, 8 USCMA 421, 24 CMR 231, a majority of the Court concluded that honorable discharge during the pendency of a case on appeal did not abate the proceedings. Nothing in United States v Loughery, 12 USCMA 260, 30 CMR 260, upon which appellate defense counsel rely, is inconsistent with the earlier position of the Court. We do not deem the present case a propitious occasion for re-examining the question and, accordingly, decline to give it further consideration here.

Resolution of the issue regarding the sufficiency of the evidence to support the findings of guilty requires that we examine the proof in the record, bearing in mind the injunction that ours is an inquiry into legal sufficiency rather than resolution of factual questions.

United States v O'Neal, 1 USCMA 138, 2 CMR 44; United States v Brand, 10 USCMA 437, 28 CMR 3.

During the period from August 1959, through October 1959, the Officers' Open Mess, Kadena Air Base, Okinawa, operated blackjack and dice games three or more nights weekly. This officially sponsored gambling was supplemented by permissive use of the Mess' stag bar on other evenings for private games. When the Mess was closed for the night, participants frequently continued their games in an individual's living quarters. These "official" and private games involved large sums of money and were financed either by use of cash or the passing between players of checks. In the event the latter were used, the place for the payee's name was sometimes left blank and the check cashed at the Mess by its ultimate winner. In these instances, the Mess' name was stamped on the appropriate line. On other occasions, checks were cashed by the players at the Mess and the cash thus obtained used in the club's games or in the private gambling.

The accused arrived in Kadena, Okinawa, from the United States on September 12, 1959. He immediately began to participate in the gambling at the Officers' Mess and, after the club closed, continued his wagering in private games held elsewhere. Large sums of money were involved, and resort was soon had to the use of checks which were passed rapidly among the parties. The games continued throughout September and early October.

Accused's checks were written on a bank in the United States in which he had an active account. Statements were forwarded to his wife in the States. He attempted to keep mental account of the checks which he had written, allowing a cushion of two or three hundred dollars to protect himself. On September 30, 1959, realizing that he may have written too many checks, he telephoned his wife in the United States and caused her to deposit an additional $1,500.00 to their account.

After one hectic blackjack game, a Marine Lieutenant held checks from the accused in the amount of $1,940.00.

He agreed to hold these checks until December 15, provided accused paid off part of them by October 1. Accused complied with the Lieutenant's request. Nevertheless, the Lieutenant almost immediately negotiated at least four of the checks, totaling $400.00 in value.

In October 1959, accused's gambling losses came to the attention of his commanding officer. As a result, he was informed that he was being sent to a hospital in Japan on two days' temporary duty in order that he might be psychiatrically examined. Apparently fearful that he had overdrawn his account, accused sought out the manager of the Kadena Branch, American Express Company. He informed him that some checks might possibly be returned and asked that they be held until his return from Japan, a period of two or three days. The manager agreed to hold the checks. Accused also informed him he would deposit sufficient funds in his Kadena bank account to cover any of these returned items and they were to be charged to this account. On October 20, 1959, accused made a deposit of $573.32 to the account. The deposit was made from the proceeds of insurance policy loans which accused had had in his possession for several days.

On October 18, 1959, and October 21, 1959, respectively, accused cashed two checks at the Kadena Branch, Ryukyus Central Exchange, each in the amount of $50.00.

Accused departed for Japan on October 22, 1959. He was not permitted to return until November 11, 1959. Upon arrival at Kadena, he was informed that seven checks presented to the Officers' Mess had been dishonored and that his check cashing privileges had been revoked. He immediately redeemed these checks.

On November 24, 1959, accused was notified that the two checks cashed at the Exchange had been returned. On the same day, he withdrew the necessary funds from his American Express account and redeemed these checks. These instruments form the basis of the findings of guilty now before us.

The offense of wrongful appropria-

tion requires proof of a taking, obtaining, or withholding of the ▉▉▉▉▉▉ property of another, of some value, with the intent temporarily to deprive the other of its possession or temporarily to appropriate it to the use of one other than the owner. Code, supra, Article 121. In the case of wrongful appropriation by check, an obtaining of something of value by means of a false representation concerning the instrument's validity is normally involved and, in all instances, it is required that the evidence demonstrate accused's specific criminal intent as outlined above. United States v Rowan, 4 USCMA 430, 16 CMR 4. The question to be resolved here is narrowed to the issue of accused's knowledge of the falsity of the representation that his checks were valid and to his intent, for he freely admitted at the trial that he wrote and presented the two checks here involved and received their proceeds in cash.

In essence, the Government argues that the accused's negotiation of a large number of checks in connection with his gambling, his "mental bookkeeping," and conversation with the American Express Company bank manager, as well as the other facts in the record, demonstrate that he could not have honestly believed his account was sufficient to pay the two checks when presented. On the other hand, accused urges that there is no foundation in the record for a finding that he possessed the requisite specific intent.

We believe the position of appellate defense counsel is meritorious. In United States v Groom, 12 ▉▉▉▉▉▉ USCMA 11, 30 CMR 11, we dealt with proof that an accused had made and uttered checks on an active account which were dishonored upon presentment and paid immediately upon their return through banking channels to the payee. In concluding that the evidence failed to establish that the accused had *dishonorably* failed to maintain sufficient funds on deposit to meet these obligations on his account, a unanimous Court stated, at page 13:

". . . Summed up most favorably to the Government, the evidence does not go beyond establishing the fact that accused overdrew his account on three occasions and paid off the overdrafts on specified dates. Absent proof of other circumstances, these factors are insufficient in law to permit an inference that he *dishonorably* failed to maintain sufficient funds on deposit to cover the returned checks."

In the instant case, the Government was required to prove the existence on the part of the accused of a specific criminal intent temporarily to defraud the payee of the two checks. Yet, the evidence in this record is substantially the same as that presented in United States v Groom, supra, in which only the less stringent element of dishonorable conduct was involved. The accused had an active bank account, but the only returned items in the two years in which it had existed were twelve checks written during the two months in which he was engaged in the conduct set out above. Each returned item was paid off as soon as he received notice of its dishonor. Moreover, not only did accused make telephonic arrangements for a large deposit in his account at the end of September, but he also consulted the local bank manager and obtained agreement that returned items would be charged to his local account, placing a large sum of money to his credit for that purpose.

While it is true that accused followed the unwise course of engaging in "mental bookkeeping," we do not believe this single circumstance has the significance attributed to it by the Government in light of the other tacitly conceded factors present in this record. Accused's deposits, his agreement with the American Express Company, and his immediate payment of his obligations so color his failure to keep proper records that it would be unreasonable to infer from this carelessness alone that he intended to defraud the Exchange to which he presented the two dishonored checks. In short, the entire record in this case depicts an individual whose failure to employ proper controls led to financial chaos. His negligence, however, is not a proper basis

for concluding that he acted with the requisite intent. United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Groom, supra. Indeed as Judge Latimer noted in United States v Sellers, 12 USCMA 262, 30 CMR 262, at page 272:

". . . The business world is not a utopia, and it happens in the course of commercial activity that responsible citizens and firms unwittingly or through excusable mistake, or fully intending that a covering deposit will be made, issue checks against insufficient funds. Surely without some showing of fraud, deceit, evasion, false promises, or other culpable circumstances, no one would contend accused's actions offend against the law."

It is these culpable circumstances which are lacking in this record, and we are required, therefore, to conclude that the evidence is insufficient in law to support the findings of guilty reached by the court-martial. United States v O'Neal, supra; United States v Brand, supra.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. The charges are ordered dismissed.

Chief Judge QUINN and Judge KILDAY concur.