## UNITED STATES

v.

**Sergeant Helmut GIBSON, FR 518–64–7207 Detachment 14, 31 Weather Squadron United States Air Forces in Europe.**

**ACM 21873.**

U. S. Air Force Court of Military Review.

6 Nov. 1975.

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston. Appellate counsel for the United States: Colonel C. F. Bennett, Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

## DECISION

LeTARTE, Chief Judge:

In consonance with his pleas, the accused was convicted of two absences without authority and three offenses of making and uttering worthless checks, in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 934. He was also convicted, contrary to his pleas, of forging a check and of dishonorably failing to discharge a debt, in violation of Articles 123 and 134. The approved sentence extends to bad conduct discharge, forfeiture of $25.00 per month for four months, confinement at hard labor for four months and reduction in grade to airman basic.

In their first assignment of error, appellate defense counsel assert that the accused's pleas of guilty to the three specifications alleging dishonorable failure to maintain sufficient funds for payment of issued checks (Specifications 1–3, Additional Charge) were improvident. We agree.

During the inquiry into his guilt-in-fact, the accused admitted that he made and uttered the checks in issue, that he received cash or merchandise in exchange therefor and that these checks were not paid by the drawee bank at the time they were presented for payment. However, the accused did not admit that at any time subsequent to the issuance of the checks he was aware that he did not have sufficient funds in his account to cover their payment upon presentment. He indicated only that at the time he wrote the checks, he did not know there would be insufficient funds in his account to pay the checks and that while he intended the checks to "go through," he "didn't pay [any] attention to them" and did not maintain a check register.

After the accused had replied affirmatively to the military judge's question, "Were your actions in fact dishonorable," the following colloquy occurred:

MJ: And you understand what the term "dishonorable" means, as I explained it to you?

ACCD: Yes, sir; I do.

MJ: I'd like to advise you again, you are advised that the term "dishonorable" imports your failure to maintain sufficient funds in the American Express bank for payment of such checks upon its [sic] presentment for payment was characterized by deceit, willful evasion, bad faith, gross indifference or false promise. There's no hesitation by you to characterize your actions when you presented those checks as dishonorable?

ACCD: I wasn't gross indifferent at that time.

MJ: And your actions were in fact dishonorable?

ACCD: Yes, sir.

MJ: Sergeant Gibson—

ACCD: Yes, sir.

MJ: Do you understand in your plea of guilty you admit that each of the elements I have discussed with you accurately describes what you did?

ACCD: Yes, sir.

MJ: And you believe and admit that taken together the elements correctly describe what you did?

ACCD: Yes, sir.

Following this dialogue, the military judge accepted the accused's pleas of guilty to the specifications in issue.

 Under Article 134, Code, *supra*, a dishonorable failure to maintain sufficient funds in or credit with the drawee bank to cover previously issued checks requires proof that the accused acted in bad faith or with gross indifference with regard to his bank balance. *United States v. Groom*, 12 U.S.C.M.A. 11, 30 C.M.R. 11 (1960); *United States v. Stratton*, 11 U.S.C.M.A. 152, 28 C.M.R. 376 (1960); *United States v. Brand*, 10 U.S.C.M.A. 437, 28 C.M.R. 3 (1959). Mere negligence in failing to maintain sufficient funds in one's account is not an offense under military law. *United States v. Downard*, 6 U.S.C.M.A. 538, 20 C.M.R. 254 (1955). And, in contrast to the offense denounced by Article 123a, the Article 134 bad check offense does not require proof that the accused knew at the time he uttered the check that he did not or would not have sufficient funds for its payment; the gist of the offense in issue lies in an accused's conduct *after* issuing worthless checks. Manual for Courts-Martial, 1969 (Rev.), paragraph 213f(8). Therefore, if the accused's conduct in the instant case is to be characterized as dishonorable, it has to be on the basis of his gross indifference or bad faith with respect to the status of his checking account at the time the checks were presented for payment to the drawee bank.

 After properly defining "dishonorable" and the applicable time-factor involved, the military judge inexplicably concluded his advice with the question: "There's no hesitation by you to characterize your action *when you presented those checks as dishonorable*?" Emphasis supplied. In response, the accused denied being "gross indifferent *at that time*" although he agreed that his actions "were in fact dishonorable." The military judge apparently perceived no inconsistency in this reply, for he made no attempt to delve further into the accused's meaning. Consequently, it is not possible to determine whether the accused's denial of gross indifference related to the time he issued the checks or to the time of their presentment for payment. Nevertheless, either interpretation leads us to the same result. If the accused meant he was not grossly indifferent when he issued the checks, his answer was of no consequence since his conduct at that time is not an element of proof of the offenses of which he pleaded guilty. On the other hand, if the accused was denying gross indifference to the state of his account at the time the checks were presented for payment, then his response was inconsistent with his proffered pleas.

 As indicated above, the accused's single concession of conduct characteristic of dishonorableness was his admitted failure to keep a record of issued checks, but this was not sufficient in itself to establish his guilt if occasioned by mere negligence rather than gross indifference. Thus, before accepting the accused's pleas, the military judge should have inquired further into such acts, knowledge or state of mind on the accused's part that would be indicative of bad faith or gross indifference to the balance of his account when the checks were to be presented for payment. *United States v. Stratton, supra*. His failure to do this rendered improvident the accused's pleas of guilty of Specifications 1–3 of the Additional Charge. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

 The second issue raised by appellate defense counsel is, in our opinion, without merit, and we do not agree with their third assignment wherein they argue that the accused's false, but verbal, representation to the payee of a check, that he had the authority to sign another's name thereto as drawer, negated an intent to defraud and

thus did not constitute forgery. Under military law, one who signs the name of another as drawer of a check but adds the word "by" with his own signature, thereby indicating his authority to sign, is not guilty of forgery even though no such authority exists. Manual for Courts-Martial, *supra*, paragraph 202; *Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962). However, this rule does not apply to situations in which the purported authority to sign is not affirmatively indicated on the face of the check itself. *Ross v. United States*, 374 F.2d 97 (8th Cir. 1967), cert. denied, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967).

Though not assigned as error, we have detected another issue in this case warranting our consideration. Under Specification 1 of Charge III, the accused stands convicted of dishonorably failing to pay a debt from 15 October 1974 until 15 November 1974. In proof of this offense, the prosecution introduced evidence that on 12 August 1974, the accused obtained a loan in the amount of 4,000 marks from a German banking institution. This loan was to be repaid in two equal installments of 2,000 marks, on 15 September and 15 October, plus interest. Before approving the loan, the bank's "credit specialist," Mr. Peter Scheer, required the accused to obtain a "co-signer who has his residence in the local area and who is a solvent person."

Shortly after the September due date, Mr. Scheer wrote to the accused and "reminded him that the first payment had become due." In response, the accused "called" Mr. Scheer and indicated he was in the hospital but would make payment within the next few days. Thereafter, the accused again called Mr. Scheer and "firmly promised to pay on the same day at least 800 marks," but he did not do this. Instead, the loan was paid by the cosigner in November.

On these facts, we are not convinced that the accused's failure to pay his indebtedness was dishonorable. The law provides . . . that the mere failure to pay debts promptly does not violate military law unless the attendant circumstances are such as to make the failure dishonorable; i. e., the debt must have been contracted under false representations or the failure to pay characterized by deceit, evasion, or false promises, and the failure to discharge the obligation continues for an unconscionable period.

*United States v. Stevenson*, 30 C.M.R. 769, 774 (AFBR 1960), and cases cited therein. Furthermore, the mere failure to keep a promise to pay a debt is not in itself dishonorable unless made with fraudulent or deceitful purpose in order to evade payment. *United States v. Stevenson, supra.* In short, "an affirmatively culpable conduct or attitude" with respect to one's indebtedness is a prerequisite to *criminal* responsibility. *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (1955).

Here, the only evidence introduced to establish the accused's guilt of the offense in issue was his failure to discharge his indebtedness in strict compliance with the agreed payment dates, his subsequent unkept promise, on two occasions, to make a payment and the eventual payment of the debt by the cosigner rather than the accused. Contrarily, the Government witness' testimony clearly demonstrated that the accused did not falsely represent his ability to discharge the obligation, for Mr. Scheer refused to approve the loan without a "solvent" cosigner. Evidently, Mr. Scheer was aware of the accused's diminished, if not total, inability to repay the debt, and although this circumstance would not necessarily exonerate the accused, it is a proper factor to consider in determining whether the accused's conduct in obtaining the loan was dishonorable. Further, payment of the debt by the cosigner within a reasonable period is not inconsistent with the accused's good faith in the absence of any evidence that the cosigner was himself deceived or defrauded into guaranteeing the loan. Finally, there is no indication in the record that the accused's failure to fulfill his promises to pay the debt stemmed from a fraudulent or deceitful attempt to avoid payment thereof. Accordingly, we find the evidence

insufficient to establish the accused's guilt of the offense alleged in Specification 1 of Charge III beyond a reasonable doubt.

 For the reasons stated, the findings of guilty of Specification 1 of Charge III and Charge III are incorrect in law and fact and are hereby set aside and ordered dismissed. The findings of guilty of Specifications 1–3 of the Additional Charge and the Additional Charge are incorrect in law and are hereby set aside and are also ordered dismissed since we find sentence reassessment to be the more logical alternative, in the interest of justice, than ordering a rehearing of these charges. Having reassessed the sentence on the basis of the offenses herein affirmed, we find only so much thereof appropriate as provides for discharge from the service with a bad conduct discharge.

The findings of guilty and the sentence, both as modified herein, are

Affirmed.

EARLY and ORSER, Judges, concur.