UNITED STATES

v.

Airman Basic Russell W. HARVILLE, FR 453–15–5464, United States Air Force.

ACM S24696.

U. S. Air Force Court of Military Review.

Sentence Adjudged 7 Nov. 1978.

Decided 25 June 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Patrick A. Tucker.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Captain Robert T. Mounts and Colonel Michel Levant, USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a special court-martial, with members, the accused was convicted of absence without authority, wrongful appropriation of a motor vehicle and nine specifications of uttering worthless checks with intent to defraud, in violation of Articles 86, 121 and 123a of the Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921 and 923a. In his action, the officer exercising general court-martial authority approved the adjudged findings of guilty except for those involving the checks; as to those he approved only the lesser included offenses of issuing checks and thereafter dishonorably failing to place or maintain sufficient funds in the bank for their payment upon presentment, in violation of Article 134, Code, 10 U.S.C. § 934, supra. The approved sentence is a bad conduct discharge, confinement at hard labor for three months and forfeiture of $279.00 per month for three months.

■ We find no merit in the appellate defense contention that the action of the special court-martial convening authority, dated 12 January 1979, is null and void. Consideration of the affidavit submitted by appellate government counsel * satisfies us that the action, taken by the convening authority after he had "withdrawn" his premature original unpublished action, was an authorized modification. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 89*b*.

In another of their claims of error appellate defense counsel assert the evidence is insufficient to support the worthless check conviction (Charge III and the nine specifications thereunder). After carefully weighing the evidence, we agree.

The accused was convicted of cashing nine checks in various amounts totaling $98.41 and thereafter dishonorably failing to place or maintain sufficient funds in his bank account for their payment upon presentment. The checks were uttered between 14 July 1978 and 1 August 1978 at various branches of the Louisiana Area Exchange, Barksdale Air Force Base, Louisiana. Stipulated evidence established that the accused made and uttered the checks as alleged and that they were returned by his bank to the payees unpaid because of insuf-

---

* The government motion for leave to file the affidavit is granted.

ficient funds. The accused was notified by his first sergeant of the nine returned checks on 1 September 1978 and redeemed them all on 15 September 1978. The government also introduced copies of monthly statements indicating activity in the accused's bank account during the relevant period.

In defense, the accused testified that he believed the checks were good when he cashed them. In addition, he continued, a friend wrote him a check for $100.00 which he cashed at the bank and deposited $20.00 in his checking account. He was subsequently notified that the check had "bounced." According to the accused, an official of the bank informed him they would either recoup their money by debiting his account in an amount equal to the check or refer the instrument to a collection agency. The accused testified he told the bank officer to turn the check over to their collector and the bank agent agreed to do so. However, the $100.00 was thereafter deducted from his bank account without his knowledge or consent. In support of his assertion, the accused pointed to an entry in his bank statement dated 20 July 1978, which indicated a deposit of $20.00. To that date, he said, all his checks had been honored. He conceded receiving notification from his first sergeant that the charged checks had been returned for insufficient funds. He redeemed all of the dishonored checks on 15 September 1978, the earliest date he had sufficient funds to do so.

The bank account on which all worthless checks were drawn was jointly held by the accused and his wife. Examination of the pertinent statements reveals that on 14 July 1978, the date the initial worthless check was uttered, the account had a credit balance of $276.42. Thereafter, the account reflects activity consisting of deposits and withdrawals resulting in a debit balance as of 20 July 1978. Numerous returned check charges of $10.00 each are shown. Interestingly, two of the entries reflect debits of $100.00 each, on 20 and 21 July 1978; however, the accused did not suggest in his testimony that either entry represented the

bank's action to recoup the $100.00 worthless check from his friend.

■ Having carefully evaluated the foregoing evidence, we are not convinced that the accused's failure to maintain sufficient funds to pay the checks upon presentment was dishonorable. A dishonorable failure to deposit or maintain sufficient funds for the payment of checks previously drawn requires proof that the accused's conduct was characterized by deceit, evasion or false promises indicating that he acted in bad faith or with gross indifference to the state of his account. *United States v. Groom,* 12 U.S.C.M.A. 11, 30 C.M.R. 11 (1960); *United States v. Stratton,* 11 U.S.C.M.A. 152, 28 C.M.R. 376 (1960); *United States v. Brand,* 10 U.S.C.M.A. 437, 28 C.M.R. 3 (1959); *United States v. Kess,* 48 C.M.R. 106 (A.F.C.M.R.1973). Simple negligence, inadvertence or indifference by one accused of failing to maintain sufficient funds in his banking account is not an offense in military law. *United States v. Downard,* 6 U.S.C.M.A. 538, 20 C.M.R. 254 (1955). Culpable circumstances must be shown to prove the crime. In fact, the element of dishonorableness essential to the offense contemplates a state of mind "closely allied to that of a specific criminal intent." *United States v. Groom,* supra, at 13.

Here, all of the checks in question were uttered within a two week period of time which preceded notification to the accused that they had been returned by the drawee bank unpaid. He redeemed them at his first apparent reasonable opportunity to do so, his first payday after notice of dishonor. On the date he uttered the initial check in issue, his checking account contained sufficient funds to cover it. During the period pertinent to the remaining checks, his checking account reflects activity that resulted in a debit balance, yet during that same time span deposits totaling over $150.00 were made. Of further relevance to the crucial aspect of dishonorableness, within the same time frame the drawee bank debited the accused's account a total

of $72.25 for returned check and service charges. The government presented no proof as to when or whether the accused was notified of such charges by the bank. Despite all the activity in the accused's account, the sum of $61.89 represents the maximum amount his account was ever overdrawn. Under the circumstances, we are not persuaded that the accused uttered an unreasonable number of checks in amounts far in excess of his ability to pay. *United States v. Kess*, supra.

We simply do not find in the record evidence which establishes beyond reasonable doubt the culpability essential to the offenses charged. *United States v. Groom*, and *United States v. Downard*, both supra. The accused was no doubt negligent in failing to maintain an accurate record of issued checks and the status of his account. However, in light of the factors reviewed, with particular emphasis on the absence of any showing he was aware his account was overdrawn until 1 September 1978, the evidence does not establish that the accused's failure to maintain sufficient funds in his account was the result of dishonorable conduct. Accordingly, we find the evidence insufficient to prove the accused's guilt of the offenses alleged in Charge III.

 In the final claim of error meriting address, we agree with appellate defense counsel that the testimony of a security police investigator that the victim of the wrongful appropriation offense twice indicated her vehicle had been stolen, was inadmissible hearsay. Manual for Courts-Martial, supra, paragraph 139a. Nevertheless, in this instance we are satisfied that the accused suffered no specific prejudice in consequence of the error. Although he was tried for larceny of the motor vehicle in question, the accused was convicted of the lesser included offense of wrongful appropriation. By such finding, any potential harm stemming from the hearsay evidence was largely neutralized. Moreover, and of primary significance, on the basis of our review we are convinced that the independent, competent evidence overwhelmingly establishes the accused's guilt. According-

ly, there is no fair risk the accused was prejudiced by the erroneous admission of hearsay evidence. *United States v. Zone*, 7 M.J. 21 (C.M.A.1979); *United States v. Johnson*, 1 M.J. 152 (C.M.A.1975); *United States v. Satey*, 16 U.S.C.M.A. 100, 36 C.M.R. 256 (1966); *United States v. Hooper*, 4 M.J. 830 (A.F.C.M.R.1978); *United States v. Hall*, 2 M.J. 927 (A.C.M.R.1976).

The remaining assignments of error are without merit or were considered by the staff judge advocate in his review and properly resolved adversely to the accused. On the basis of the evidentiary deficiency discussed, the findings of guilty of Charge III and its specifications are hereby set aside and ordered dismissed. The remaining findings of guilty are correct in law and fact. Reassessing the sentence on the basis of the approved findings, we find appropriate only so much thereof as provides for bad conduct discharge, confinement at hard labor for two months and forfeiture of $150.00 per month for two months.

The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

EARLY, Chief Judge, and HERMAN and ARROWOOD, Judges, concur.