**UNITED STATES, Appellee,**

v.

**Private First Class Daniel ELIZONDO, Jr., 451–33–2343, United States Army, Appellant.**

**ACMR 8801805.**

U.S. Army Court of Military Review.

15 Nov. 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Andrew G. Oosterbaan, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC.

Before FOREMAN, SMITH and VARO, Appellate Military Judges.

**OPINION OF THE COURT ON FURTHER REVIEW**

FOREMAN, Senior Judge:

Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted the appellant of three specifications of making and uttering worthless checks, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1982) [hereinafter UCMJ]. His approved sentence provides for a bad-conduct discharge, confinement for 12 months, forfeiture of $200.00 pay per month for 12 months, and reduction to Private E1. Four of the six court members recommended that the bad-conduct discharge and all confinement be suspended, but the convening authority approved the adjudged sentence without suspension.

On 30 June 1989, this court set aside the action of the convening authority and ordered a new review and action because the appellant was denied effective representation of counsel during post-trial processing. *United States v. Elizondo*, 28 M.J. 910 (A.C.M.R.1989). After a new review and action, the new convening authority approved the findings and sentence. The case was then submitted to this court on its merits with no assignments of error.

We have reviewed the evidence and are not satisfied that the appellant's guilt was established. Article 66(c), UCMJ, 10 U.S.C. § 866(c). Instead of proving criminal misconduct, the evidence shows that the appellant was totally baffled by the mysteries of checking account management.

The appellant grew up in a small south Texas town. In high school he worked for his uncle, building septic tanks, and was always paid in cash. After high school, he worked as a welder, a carpenter and a truck driver. On pay day he would take his paycheck to the supermarket and cash it or give it to his wife "and she took care of it." His parents never had a saving or checking account and paid for everything in cash. The appellant never had a savings or checking account until he started one after his arrival in Germany because his first sergeant told him that he would be "chaptered out" [1] if he did not enroll in the Army Sure Pay system.

Rather than open an account at the on-post bank, the appellant sent a money order for $200.00 to his sister and asked her to open an account "because the only way I knew how to get one was tell my sister because she does work at the bank." The appellant's sister opened a checking account for him at the Southwest National Bank in Austin, Texas.

During December 1987, the appellant received a book of starter checks and wrote six checks, all of which were honored. Also during December, the appellant changed his pay option from check-to-unit to direct deposit. The change was effective in January 1988, and on 1 February, the appellant's January pay was deposited in his checking account.

Between 30 January 1988 and 25 March 1988, the appellant wrote twelve checks which were honored and thirty-six which were dishonored. The thirty-six dishonored checks, written to the Baumholder Club System, the American Express Bank, and the Army and Air Forces Exchange System (AAFES), are the basis of the three specifications for which the appellant was convicted.

On 29 February 1988, the Baumholder Club System sent its first notification letter to the appellant, advising him that a check had been dishonored. On 14 March 1988, AAFES sent the first of nine notification letters to appellant. On 5 April 1988, American Express sent its first notification. Although none of the thirty-six dishonored checks were redeemed within five days of notification, all were redeemed by 25 July 1988.

On 28 March 1988, the appellant was notified by Southwest National Bank that his account was being closed because of his dishonored checks. His military pay continued to be sent to the bank until July.

The appellant's bewilderment is amply demonstrated by his testimony on the merits and the extensive cross-examination by both counsel, the military judge and the court members. When the appellant received his check registers from the bank, he tore off the calendar and kept it but threw away the check register "because it didn't have no checks in there." When the appellant cashed his first checks, the cashiers had to explain to him how to write a check. He did not know how to read his bank statements or reconcile his account. He knew that he was supposed to keep track of his balance, but tried to do it "in my head." He paid for AAFES purchases on the Delayed Payment Plan by cashing checks for cash and then paying cash rather than paying directly by check. When he was notified by American Express that checks had been dishonored, he cashed checks at AAFES and redeemed the American Express checks in cash. Since AAFES did not send the appellant any notices of dishonor until 14 March, he assumed that the AAFES checks were being honored. The appellant knew that, in addition to his

---

1. The term "chaptered out" refers to the administrative discharge of enlisted soldiers under the provisions of Army Reg. 635–200, Personnel Separations: Enlisted Personnel (20 July 1984) (C 12, 8 July 1988) [hereinafter AR 635–200]. Each ground for separation is set out in a separate chapter, *e.g.*, Separation because of Dependency or Hardship (Chapter 6), Defective Enlistments and Inductions (Chapter 7), Alcohol or Other Drug Abuse Rehabilitation Failure (Chap-

ter 9), Retirement for Length of Service (Chapter 12), Separation for Unsatisfactory Performance (Chapter 13), Separation for Misconduct (Chapter 14), and Separation for Homosexuality (Chapter 15). Hence, to be administratively discharged for any of the grounds set out in AR 635–200, especially those related to unsatisfactory performance or conduct, is to be "chaptered out."

monthly pay, he was entitled to approximately $400–500 in back pay for cost of living allowances (COLA), which he assumed would be deposited directly to his checking account. After receiving the notifications that his checks had been dishonored, the appellant redeemed them by writing more checks for cash at AAFES, explaining "I figured my paycheck would be there [at the bank] before the checks ever got there, but they never did...." He thought that checks cashed at AAFES would be mailed first to American Express and then mailed to his bank in Austin, Texas. By the time the appellant received his first notices of dishonor, he had written too many checks to redeem them all. Because his bank had closed his account but was still receiving his military pay, the appellant received no military pay until July. He sent "that leather thing" and two or three checkbooks to his sister to "see if she could figure it out." The appellant sold his video cassette recorder and television set and pulled guard for other soldiers to generate money. All dishonored checks were redeemed by 25 July 1988.

At the end of his testimony a court member asked the appellant, "What have you learned from all this?" The appellant responded, "Never to get another checking account."

We find no evidence of intent to defraud or deceive. Manual for Courts–Martial, United States, Part IV, paragraph 49 [hereinafter M.C.M., 1984]. To the contrary, the evidence reflects a conscientious effort by appellant to extricate himself from a situation he did not understand. We hold that the evidence is insufficient to establish a violation of Article 123a.

We have also examined the evidence to determine if the evidence establishes the lesser included offense of dishonorably failing to maintain sufficient funds, in violation of Article 134, 10 U.S.C. § 934. We find that it does not. At most, the evidence shows some degree of negligence in that the appellant knew that he was gambling on his military pay reaching the bank before his checks. However, simple negligence is not sufficient. M.C.M., 1984, Part IV, paragraph 68c. There is no evidence that the appellant's failure to maintain sufficient funds was the result of "deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." M.C.M., 1984, Part IV, paragraphs 68c and 71c. *United States v. Brand*, 28 C.M.R. 3 (C.M.A.1959); *United States v. Hensley*, 26 M.J. 841 (A.C.M.R.1988). We hold that the evidence is insufficient to establish a violation of Article 134.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Judge SMITH and Judge VARO concur.