**UNITED STATES, Appellee,**

v.

**Private (E–2) Jimmy W. ROETTGER, SSN 467–15–2607, United States Army, Appellant.**

**SPCM 16198.**

U.S. Army Court of Military Review.

13 May 1983.

---

shire II, JAGC, Major Paul J. Luedtke, JAGC, Major Raymond C. Ruppert, JAGC, Major Joyce E. Plaut, JAGC, and Captain Thomas R. Peppler.

Captain Eugene R. Milhizer, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Major Thomas M. Curtis, JAGC, and Captain Rexford T. Bragaw, III, JAGC.

Before The Court Sitting En Banc.

## OPINION OF THE COURT

CLAUSE, Senior Judge:

Appellant was convicted, pursuant to his pleas of guilty, by a special court-martial, judge alone, of violating a lawful general regulation (unlawful possession of drug paraphernalia), willful destruction of military property (two specifications), willful damage to military property, larceny of personal property (three specifications), larceny of non-appropriated fund property, housebreaking (two specifications) and possession of marijuana in the hashish form, violations of Articles 92, 108, 121, 130 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 908, 921, 930, and 934 (1976). He was sentenced to a bad-conduct discharge, five months confinement, forfeiture of $334.00 pay per month for five months and reduction to Private E–1. Pursuant to a pretrial agreement, the convening authority reduced the periods of confinement and forfeitures to four months and otherwise approved the sentence.

On mandatory review before this Court the appellant assigned no errors. A panel of the Court affirmed the findings of guilty and the sentence by decision issued on 27 August 1981. On 8 September 1981, a copy of the Court's decision was mailed to the appellant at the address he had given upon release from confinement. On 15 September 1981, the appellant died of a self-inflicted gunshot wound. There is no evidence as to whether the appellant had received a copy of the Court's decision at the time of

Captain Jon S. Pascale, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex. Brook-

his death. No petition to the Court of Military Appeals had been filed at the time of death.

On 25 September 1981, Appellate Defense Counsel filed a motion to hold the proceedings in abeyance to allow counsel time to confirm informal notification of appellant's death on 15 September 1981. The motion was denied as there was nothing to "hold in abeyance", the findings and sentence having been affirmed on 27 August 1981. Subsequently, on 24 November 1981, Appellate Defense Counsel filed a "Motion to Abate Proceedings and Dismiss the Charges Because of Death of Appellant." The basis for the motion is appellant's death "prior to the completion of his mandatory appeal of right under Article 66, Uniform Code of Military Justice." There is no allegation that appellant had not received notice of this Court's decision. On 3 December 1981, Government Appellate Counsel moved for an enlargement of time to oppose the motion to abate and to investigate whether appellant received actual notice of this Court's decision affirming the findings and sentence. On 10 December 1981, Government Appellate Counsel filed its opposition to the requested abatement and filed an affidavit to the effect that the 27 August 1981 decision of this Court had been mailed to the appellant on 8 September 1981 with a return receipt requested; however, a return receipt was never received. Subsequently, this Court ordered that the motion to abate be heard *en banc* and later specified as an issue whether an *en banc* hearing on the motion was appropriate in view of the former decision on the merits by a panel of the Court.

■ The first question is whether the Court may consider the motion to abate *en banc*. *United States v. Chilcote*, 20 U.S.C. M.A. 283, 43 C.M.R. 123 (1971), held that the full Court of Military Review could not reconsider the decision of a panel of the Court. It is clear that *Chilcote* limits the authority of the Court as a whole to reconsider and thereby redetermine an issue already decided by one of its panels. The issue in the instant case was never considered or decided by the panel which considered the merits of the case. The desire for uniformity among the panels of the Court on the issue of abatement makes it appropriate for disposition by the whole Court. We determine that *Chilcote* does not preclude such consideration. Appellate counsel for both sides also reached this conclusion on the specified issue.

■ Resolution of the abatement issue is not simple. Clearly, the death of a criminal defendant during any stage of the initial criminal process abates the action. Once a criminal trial has proceeded to verdict, the subsequent death of the defendant may have different results depending upon the status of the case at the time of death. Different rules are also applied depending on whether the appeal is mandatory, an appeal of right, or discretionary. Some states provide for resolution of the issue by statute. Although there are numerous state and federal cases pertaining to the issue of abatement, they are not easily interpreted as the term "abatement" when used at the appellate level may have a different meaning in different jurisdictions. Basically, it may mean that the criminal action is abated *ab initio,* or that only the appeal is abated, or that only the remaining portion of the sentence is abated. For a collection of authorities too numerous for citation *see* Annotations, 83 A.L.R.2d 864 (1962); 9 A.L.R.3d 462, 496 (1966). However, certain general rules have evolved.

Most state and federal courts follow the well-established rule that the death of a criminal defendant while his conviction is pending before a court on appeal will abate not only the appeal but also the prosecution from its inception. The United States Supreme Court followed what they described as the general rule in *Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), where the defendant died while his petition for certiorari was pending before the Court. Certiorari was granted, the judgment below vacated, and the case remanded to the District Court with instructions to dismiss the indictment. Subsequently, in *Dove v. United States,* 423

U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), the Court was presented with the same situation; however, in this case, abatement was not ordered and only the petition for certiorari was dismissed. The Court stated that to the extent this disposition was inconsistent with *Durham,* that much of *Durham* was overruled. As the Court did not set forth the rationale for its disposition in *Dove,* it has generally been interpreted as not requiring abatement in discretionary appeals as distinguished from appeals of right. Thus, *Dove* has had little effect as most state and federal courts have construed the basis of appeal to them as one of right and continue to follow the general rule and abate the entire proceedings if a defendant's case is pending before them at the time of his death. *See United States v. Pauline,* 625 F.2d 684 (5th Cir.1980); *United States v. Littlefield* 594 F.2d 682 (8th Cir. 1979); *United States v. Moehlenkamp,* 557 F.2d 126 (7th Cir.1977); *United States v. Bechtel,* 547 F.2d 1379 (9th Cir.1977). The United States Court of Military Appeals in *United States v. Kuskie,* 11 M.J. 253 (C.M. A.1981), also continued to apply the general rule of abatement despite the Government's urging that the court should follow *Dove* because their petition practice was similar to the discretionary certiorari practice of the Supreme Court.

It is important to note that the appellant in this case did not die while his case was pending appeal. His conviction was affirmed by this Court on 27 August 1981 and he died on 15 September 1981 as a result of a self-inflicted gunshot wound. Consequently, the appellant's case does not fall within the general rule of abatement or the federal abatement practice. The rule requiring abatement is generally limited to cases pending on appeal at the time of death and has not been extended to cases where death occurred within the period for reconsideration or before the expiration of the period for filing further appeal of right.

■ In the case of *State v. Rutledge,* 243 Iowa 201, 50 N.W.2d 801 (Iowa 1952), a criminal defendant died by suicide one day after the judgment of conviction was af-firmed by the Supreme Court of Iowa. Within the thirty days allowed for filing a petition for rehearing, the attorneys who had represented the deceased petitioned for rehearing, noting the death of the defendant and requesting the court to adjudge the proceedings abated *ab initio.* The court refused to abate, noting that upon the death of the defendant neither his former attorneys in their own behalf, nor on the defendant's behalf, nor any other persons, had the legal right or privilege to file a petition for rehearing. The judgment of conviction was held to be a conclusive adjudication against the defendant of all questions raised or which might have been raised on appeal. The question of who may properly act in lieu of the criminal defendant after his death, when no unresolved issues are pending before the court at the time of death, is part of the abatement problem. The right of appeal in a criminal action is a personal right that does not survive absent a statute so providing. *See City of Newark v. Pulverman,* 12 N.J. 105, 95 A.2d 889, 894 (N.J.1953). The usual practice when death occurs before resolution of a pending appeal is for counsel for either side to file a "suggestion of death" with the court before which the action is pending. That court then takes action to abate on its own motion.

The only notable exception in which a court abated the proceedings *ab initio* after rendering its appellate decision and within the period for reconsideration is *Bagley v. State,* 122 So.2d 789 (Fla.Dist.Ct.App.1960). The facts in *Bagley* are unique in that the motion for abatement was filed by the Government when the defendant died prior to the expiration of the time allowed for filing a petition for rehearing. The appellate court had initially reversed the deceased's conviction of second degree murder and remanded the case for a new trial. The motion was opposed on the basis that abatement might prejudice action by the estate to recover costs incident to the trial and appeal, and abatement would deprive the estate, relatives and friends of the deceased of whatever comfort or benefits they might have derived from the appellate decision.

Noting its continuing jurisdiction, the Court abated the proceedings *ab initio.* Clearly, a new trial was impossible after the defendant's death, and the trial court would have been required to abate the proceedings had the appellate court not so acted.

It is asserted that the Court of Military Appeals' decision in *Kuskie* mandates an abatement rule for the military broader than the present practice of state and federal courts which, as noted, limits abatement to cases pending before the court at the time of death. It should be noted at the outset that in *Kuskie* the court found that the appellant's petition was pending before them at the time of his death. Thus, their disposition was in accord with the general abatement rule. In effect, the court merely rejected the Government's suggestion that as appeals to them were discretionary, they should follow *Dove* and merely dismiss the petition and not order abatement *ab initio.* Although the court recognized that it had referred to itself as " 'the supreme court of the military judicial system' ", it found such characterization insufficient to equate a military accused's right to petition for review with a petition for certiorari to the Supreme Court. *Kuskie* at 254–55. It noted the difference in statutory language between Article 67(b)(3), UCMJ, 10 U.S.C. § 867(b)(3), and 28 U.S.C. § 1254(1), as well as the critical role it plays in the direct review of courts-martial. Finally, the court noted that in cases decided by it since *Dove,* it had not adopted the *Dove* distinction. The court's rationale and the case cited only support its decision not to adopt the *Dove* rationale. In effect, the court has merely placed itself in the same category as a Federal Circuit Court of Appeals with respect to the abatement issue.

■ There is nothing in the *Kuskie* decision which either requires or supports an extension of the general abatement rule for military courts to include cases wherein an appellant's death occurs after this Court has rendered its decision but before expiration of the period allowed for reconsideration or petition to the Court of Military Appeals.

In *Kuskie,* as well as in *United States v. Marcott,* 8 M.J. 531 (A.C.M.R.1979), and *United States v. Crawford,* 36 C.M.R. 697, 702 (A.B.R.1966), the appellant's case was pending on appeal at the time of his death. *See also United States v. Robinson,* 12 M.J. 88 (C.M.A.1981) (summary disposition). State and federal courts which apply the general rule of abatement when a case is pending before them as a matter of right have found no compelling reason to bridge the gap which exists under their practice when death occurs during a period when further review is possible as a matter of right.

The fact that this Court still had jurisdiction under its rules to reconsider this case, or that the sentence had not been ordered executed, in no way changes the fact that the appeal had been decided, and this has been the principal consideration under the general abatement rule. Civilian courts have noted their continuing jurisdiction until an approved sentence has been fully satisfied; however, this fact has not caused them to abate *ab initio* upon the death of a defendant after his appeal has been decided. A recent trend in the federal courts has been to order the abatement of the remainder of any sentence, such as a fine that has not been fully satisfied, at the time of the death of a criminal defendant. *United States v. Morton,* 635 F.2d 723 (8th Cir. 1980); *United States v. Bowler,* 537 F.Supp. 933 (N.D.Ill.1982). A similar practice is not necessary in the military as it appears this result is already accomplished by application of pertinent regulations.

In conclusion, abatement by this Court should be limited to that period subsequent to trial until a decision has been rendered by the Court. This is necessary because of the mandatory nature of our review as provided for by Article 66, Uniform Code of Military Review, 10 U.S.C. § 866. *See United States v. Marcott, supra.* As our criminal proceedings are statutory only, any further extension of the military abatement practice should be provided for by statute. As noted at the outset, the cases are so numerous and state court policies suffi-

ciently varied that authorities can be cited for just about any abatement practice. The issue is not one of Constitutional dimension and its resolution has been principally a matter of court policy. Convincing arguments can and have been stated to support all practices. But for certain administrative differences, the practice we adopt is most similar to that of federal courts and the general abatement rule.

The motion to abate is denied.

Chief Judge HANSEN, Senior Judge O'DONNELL, and Judges BADAMI, HANFT, NAUGHTON, and WERNER concur.

Judge COHEN was not present for the oral argument and did not participate in this decision.

Judge KUCERA was reassigned after the case was argued and did not participate in the decision.

FULTON, Senior Judge, concurring in part and dissenting in part: *

I concur, for the reasons explained below, in our decision to consider en banc the motion on behalf of appellant to abate the proceedings and dismiss the charges. I would, however, grant the motion and I regret that our evenly-divided state results in our not doing so. Since Judge Coker, although agreeing with the result I would reach, has written separately, I will refer to Senior Judge Clause's opinion as the plurality opinion.

Briefly, the questions to be resolved are (a) whether, after a panel of this court previously issued a decision affirming appellant's conviction, the Court sitting as a whole may now consider a motion to set aside the findings of guilty and sentence due to appellant's death, and, if so, (b) whether the motion should be denied because the appellant's death occurred after the decision had been issued even though he had not received the notice required by law to commence the period within which an accused may seek reconsideration or peti-

tion the Court of Military Appeals for a grant of review.

■ As to the first question, the issue is whether our en banc consideration is precluded by the decision of the Court of Military Appeals in *United States v. Chilcote,* 20 U.S.C.M.A. 283, 43 C.M.R. 123 (1971), which holds that a Court of Military Review sitting as a whole may not reconsider the decision of one of its panels.

Although the *Chilcote* decision turned on an interpretation of the intent of Congress in providing alternatively in Article 66(a) of the Uniform Code of Military Justice, 10 U.S.C. § 866(a) (1976), that "[f]or the purpose of reviewing court-martial cases, the court may sit in panels or as a whole . . .," I believe the decision properly may be limited to the situation then before the *Chilcote* court, which differs markedly from the situation before us.

*Chilcote's* prohibition rests on the observation that Congress, when enacting the Uniform Code of Military Justice in 1950, rejected a proposal that would have enabled one Board of Review to redetermine facts found by another Board in the same case, and that, in later substituting the present single court of panels for the several autonomous boards, Congress displayed no different intent. 20 U.S.C.M.A. at 285–87, 43 C.M.R. at 125–27; *see also United States v. Wheeler,* 20 U.S.C.M.A. 595, 597, 44 C.M.R. 25, 27 (1971). *Chilcote, Wheeler,* and all the cases that have followed involved circumstances in which an en banc Court of Military Review was of necessity reconsidering either the facts or the law, or both, previously determined by its panel. Typical are the cases of *Maze v. Court of Military Review,* 20 U.S.C.M.A. 599, 44 C.M.R. 29 (1971); *United States v. Goldman,* 21 U.S.C.M.A. 22, 44 C.M.R. 76 (1971); *United States v. Swartz,* 21 U.S.C.M.A. 75, 44 C.M.R. 129 (1971), and *United States v. Gagnon,* 21 U.S.C.M.A. 158, 44 C.M.R. 212 (1972).

In this case, however, we are not required to reconsider the law or the facts previously determined by the panel as to either the

---

* Senior Judge Fulton took final action in this case prior to his reassignment from the Court.

findings of guilty or the sentence. Arguably, we are not "reviewing" the court-martial case as that term is used in Article 66(a). In any event, we are called upon only to decide whether the court-martial proceedings should be abated ab initio because of the appellant's death. Following the example of other courts confronted with the same question, the merits or appropriateness of the conviction and sentence play no part in our decision.

Although agreeing, therefore, that we have proceeded properly, I do not agree that the Court has reached the right disposition of the motion.

■ In the Federal courts, and in many State courts, when a convicted appellant dies before his direct appeal as of right has been concluded, not only are any appellate proceedings themselves abated, but the judgment of conviction is vacated and the indictment dismissed as well. *See, e.g., United States v. Pauline,* 625 F.2d 684 (5th Cir.1980); *United States v. Moehlenkamp,* 557 F.2d 126 (7th Cir.1977). This practice was documented in *Crooker v. United States,* 325 F.2d 318 (8th Cir.1963), and approved by the Supreme Court in *Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971) (per curiam).

We have adopted a similar rule in the same circumstances, setting aside all findings of guilty and the sentence, and ordering the charges dismissed. *United States v. Marcott,* 8 M.J. 531 (A.C.M.R.1979); *see United States v. Crawford,* 36 C.M.R. 697, 702 (A.B.R.1966) ("prosecution" abated).

Here, the plurality reach a different result only because the panel's decision had been issued before the appellant's death occurred, albeit it is not shown that he received notice of the decision as required by Article 67(c) of the Uniform Code of Military Justice, 10 U.S.C. § 867(c) (1976), in the manner then prescribed by the Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 100*c*(1)(*a*). Notice, by delivery of a copy of the decision, was essential to start the running of the period within which the appellant might petition the Court of Military Appeals for a grant of review or move for reconsideration of the decision by this Court pursuant to our Rule 20(b).[1]

The plurality conclude that the civilian courts vacate a conviction and dismiss the indictment only if death occurs while proceedings are "pending." They reason that, since our decision had been issued, there was no longer a matter pending before the Court and we cannot or should not abate the prosecution. I believe they are misled by the fact that, in nearly all of the reported cases, the appellant's death did in fact occur before the court had issued an opinion —necessarily, therefore, while the appeal was still pending. The facts before us simply were not considered. Therefore, those decisions do not define the term "pending," nor do they stand for the proposition that, once a decision has been issued, there no longer is anything pending. The plurality opinion cites no case in which abatement ab initio was denied when the appellant's death occurred while the decision remained open for reconsideration.[2] *State v. Rut-*

1. When appellant died, the period in which an accused might petition the Court of Military Appeals for a grant of review was 30 days following receipt of notice of our decision. UCMJ, art. 67(c), 10 U.S.C. § 867(c) (1976). The periods established for our own reconsideration were 10 days if on motion of a party and 30 days on the Court's own motion. C.M.R. Rule 20. Since then, the period for petitioning the Court of Military Appeals (but not the period for reconsideration by this Court) has been increased to 60 days. Military Justice Amendments of 1981, Pub.L. 97–81, sec. 5, 95 Stat. 1085, 1088, 10 U.S.C.A. § 867(c) (West Supp. 1982). In addition, the amendment provides

for constructive service under certain conditions by depositing the decision in the mails. *Id.*

2. I note that, under the present administrative practice of this Court, the date an opinion bears has no certain relationship to the date the participating judges reached a decision or the date the decision was printed or authenticated by the clerk of court. Accordingly, hinging so important a determination as is involved in this case to the date appearing on the decision could result in unequal to treatment of appellants who were otherwise identically situated.

*ledge,* 243 Iowa 201, 50 N.W.2d 801, decided by the Iowa Supreme Court in 1952, is not such a case. *Rutledge* holds only that the appellant's death terminated the authority of his attorneys to act for him and that there remained no one empowered to seek reconsideration of the court's decision affirming the conviction. Such a holding need not detain us. This Court, unlike the Iowa court, may reconsider its decision on its own motion. C.M.R.Rule 20(a).[3]

Since relatively few convicted persons die in the course of an appeal in the first place, the chance of a death occurring in the presumably short interval between the promulgation of an appellate court's decision and the issuance of its mandate seems rather slender. This has happened in at least two cases, however. In *Bagley v. State,* 122 So.2d 789 (Fla.Dist.Ct.App.1960), in which the appellant died before the time allowed for filing a petition for rehearing had expired, the Florida court said

> There is no logical reason for any distinction based on whether a decision on the appeal has or has not been filed with the clerk of this court, the proper criterion being whether it has become final and the mandate issued, so as to deprive this court of further jurisdiction on the appeal.... As such is not the case on this appeal, the motion to abate is timely as to the proceedings in this court.

*Id.* at 790. In another case, in which an appellant's conviction had been affirmed, but he died before the court's mandate had issued (the mandate evidently had been stayed while the appellant petitioned the United States Supreme Court for a writ of certiorari, which was denied), the Texas Court of Criminal Appeals nevertheless abated at least the appeal (there being no abatement ab initio in Texas) because the mandate had not been issued. *Giacona v. State,* 372 S.W.2d 328 (Tex.Cr.App.1963).

Unlike the civilian courts mentioned above and the Court of Military Appeals, this Court issues no formal mandate. *Cf. United States v. Tanner,* 3 M.J. 924, 925–27 (A.C.M.R.), *pet. denied,* 4 M.J. 169 (C.M.A. 1977) (discussing effect of mandate). In terms of finality, that has caused a search for analogy. In *United States v. Sparks,* 5 U.S.C.M.A. 453, 18 C.M.R. 77 (1955), the Court of Military Appeals decided that neither the transmittal of our affirming decision to The Judge Advocate General nor its subsequent transmittal to a convening authority for service on the accused, as occurred in this case, had the legal consequences of a mandate. Instead, the court said

> [i]t would seem then that only at the expiration of 30 days from that event [i.e., from the date of service on the accused, who then had 30 days in which to petition for further review] does the board [of review]'s decision achieve that unqualified status which would serve, in terms of legal consequence, as an analogy to the mandate of a civilian court.

*Id.* at 458, 18 C.M.R. at 82 (footnote omitted).[4] The view in *Sparks* has been reaffirmed in *United States v. Kraffa,* 11 M.J. 453 (C.M.A.1981) (2–1), in which it is said that "[t]he absence of a mandate and the authority to reconsider results in an inchoate decision by a Court of Military Review until the possibility of reconsideration is removed." *Id.* at 455.[5] I have been unable

---

**3.** For that reason, one need not decide whether the authority of counsel designated pursuant to the UCMJ, arts. 70(c)(3), 70(e), 10 U.S.C. §§ 870(c)(3), 870(e) (1976), ended with appellant's death. Furthermore, we may extend the periods within which a reconsideration may be granted. C.M.R.Rule 24. Delayed receipt of notice of an appellant's death is good cause for extending the period for reconsideration. *See United States v. Kuskie,* 11 M.J. 253, 254 (C.M.A.1981).

**4.** Even in this Court's opinion in *Enzor v. United States,* 42 C.M.R. 699 (A.C.M.R.1970), purporting to establish finality in our decisions on the date of their issue, the majority spoke of finality being established only "tentatively" and being "interrupted." *Id.* at 701. When the Court of Military Appeals subsequently decided the same case, it did so on a basis other than finality eo instanti. *Enzor v. United States,* 20 U.S.C.M.A. 257, 259, 43 C.M.R. 97, 99 (1971).

**5.** Judge Fletcher's dissent, criticizing the majority for their reliance on *Sparks* because that case involved an affirmance, is not, therefore, at variance with the purpose for which I have cited *Sparks.* As was the court in *Sparks,* we

to find in the reported decisions of any of the Federal or State courts in which prosecutions are abated ab initio any decision in which that abatement was denied because an *inchoate* decision had been reached. Finally, in the only military case in which the question seems previously to have arisen, a Navy Board of Review set aside the findings of guilty and dismissed the charges when an accused was killed before the Board's decision affirming his conviction was served upon him. *United States v. Beck,* 38 C.M.R. 765 (N.B.R.1968). That is a precedent we should follow.

There is an additional reason why this Court should terminate this case ab initio. Although since 1976 the Supreme Court has observed a distinction between the mandatory and discretionary stages of Federal criminal appellate review, and merely dismisses the petition for a writ of certiorari if the petitioner dies before the petition is finally acted upon, the Court of Military Appeals has rejected any such distinction in the military appellate system. *Compare United States v. Kuskie,* 11 M.J. 253 (C.M. A.1981), *with Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (per curiam), *and Durham v. United States,* 401 U.S. 481, 483–85, 91 S.Ct. 858, 860–61, 28 L.Ed.2d 200 (1971) (Blackmun, J., dissenting). *Kuskie* holds that, if a military petitioner for grant of review by the Court of Military Appeals dies before the petition has been acted upon, all rights, privileges, and property affected by the sentence will be ordered restored. *Id.* While there may be some semantic distinction between that decree and specifically ordering the findings of guilty and the sentence set aside, the exigencies of military administrative law are such that restoration cannot be assured without setting aside the finding and sentence. *See United States v. Beck,* 38 C.M.R. at 766.[6] Setting aside the findings and sentence, except when a rehearing

is ordered, requires the further step of dismissing the charges. Uniform Code of Military Justice, article 66(d), 10 U.S.C. § 866(d) (1976).

Accordingly, *Kuskie* directly establishes that abatement ab initio flows from death at the Court of Military Appeals stage of military appellate proceedings and inferentially establishes, consistent with our *Marcott* decision, that it must also flow from death occurring at the Court of Military Review stage. Between the two, our brothers now seek to establish a hiatus based, I suppose, on the concept that, when the panel reached its decision, the appellant had the benefit of the only review that was necessary under the Uniform Code of Military Justice. In the light of the decision in *Kraffa* as well as in *Kuskie,* this would seem wrong even if the appellant's death had occurred after he was notified of the decision, so long as the period for timely petitions for reconsideration or grant of review had not lapsed or been terminated. Applied to a case in which the appellant had not even been notified of our decision so that those periods could begin to run, it is absolutely unjustifiable. I would grant the Motion to Abate Proceedings and Dismiss Charges Because of Death of Appellant.

Senior Judges MELNICK and MILLER, and Judges McKAY, LEWIS, and FOREMAN concur.

COKER, Judge, dissenting separately:

I concur in the decision to consider the appellant's motion *en banc.* As to the merits of the motion, I would grant it. The plurality opinion of Senior Judge Clause and the minority opinion of Senior Judge Fulton, clash in legalized fencing over the existence, definition, and implementation of a "general rule of abatement." Neither, adequately addresses the impact of such a rule on the criminal justice system of the

---

too are dealing with the inchoate nature of an affirmance.

**6.** Such direct sentence effects as fines are involved in relatively few cases. More often, contingent matters such as the final settlement

of pay accounts pursuant to 10 U.S.C. § 2771 (1976) will be involved. The extent to which Federal survivor benefits may be affected depends upon various statutory conditions of entitlement. See, e.g., 10 U.S.C. §§ 1475, 1480 (1976); 38 U.S.C. §§ 410, 773, 3103(a) (1976).

military services. While the ultimate issue of abatement may be one of legal policy and philosophy, it is my opinion that in this incidence of first impression, law and reason dictate a practice of this Court to abate a criminal proceeding on the death of an accused at any time prior to the termination of normal appellate processes.

The plurality opinion advocates that the general rule of abatement, as applied in civilian court practice and procedures, which would not require abatement *ab initio* in the case now before the Court, be applied to military appellate practice. That part of the general civilian rule relied on by the majority is that "no appeal was pending" at the time of appellant's death. Thus to grant abatement would be an expansion of the rule of abatement in military appellate practice. The plurality finds nothing in *United States v. Kuskie,* 11 M.J. 253 (C.M.A.1981), nor in its own independent analysis, that requires or supports an expansion of the general rule of abatement so as to require abatement in the present case. The minority opinion, while questioning the existence of a rule of law requiring abatement, implicitly equates "finality" with "pending appeal." It then determines that under present military appellate procedures the decision of this Court was not final, that in the appellant's case "an appeal was pending."

Drastic differences in the military and civilian appellate procedures dictate that finality or pendency of an appeal not be interjected into military appellate practice. The mandatory appellate reviews of Articles 65(b), 66(b), 67(b)(1) and (2), Uniform Code of Military Justice (UCMJ), have no counterpart in civilian practice. The fact finding authority of this Court under Article 66(c), the requirement that the Judge Advocate General direct final action under Article 66(e), the requirement for appellate counsel under Article 70(c) and (e), and the requirement for orders promulgating the proceedings and executing the sentence under Article 76, 10 U.S.C. § 876 are unique to military practice. The authority of this court to grant reconsideration of a case on its own motion, limited only by its own

discretion, incorporates a lack of finality not found in civilian practice, particularly since the Court has no method, practice or procedure for issuing a mandate. To apply civilian concepts of pendency of appeal within the statutorily constructed scheme of the UCMJ is to graft the elephant's nose to the camel's hump. The plurality opinion interjects a note of finality into military appellate practice that simply does not exist. It surely would be an unwarranted anomaly for a decision of this Court to be final for purposes of abatement but inchoate for purposes of reconsideration.

As only implied in the minority opinion, I find the result of the plurality opinion to be in direct conflict with the rights of servicemembers flowing from the nature of their service. Inherent in military administrative and legal practice and procedures is the protection of the individual servicemember from the mandatory actions of the government by the requirements of notice. Generally an action mandated by law or regulation, when directed against an individual, is not effective until the individual is both notified and also given an opportunity to respond. An expansion of the abatement rule is in cognizance of this practice: the decision of a military appellate court is not effective (i.e. is still pending) until the time for notice and opportunity to respond has expired in accordance with the rules and practices of the particular court. This is the point in time to determine the servicemember's rights and not some fleeting date arbitrarily designated under a concept of pendency of appeal or finality.

In my opinion there are other valid and logical reasons to extend any general civilian rule of abatement to apply in circumstances encompassed by the case before the Court. There are three stages under the rule when abatement *ab initio* is not applied: between conviction and the actual filing of an appeal of right; between issuance of the appellate court opinion and the filing of a discretionary appeal; and, during the pendency of a discretionary appeal. Decisions of this Court and the Court of Military Appeals have determined that

abatement *ab initio* will apply in the first stage, contrary to civilian practice, and will apply in effect to the third stage by the determination that an appeal to the United States Court of Military Appeals is not discretionary in nature. *United States v. Kuskie, supra; United States v. Marcott*, 8 M.J. 531 (A.C.M.R.1979). An extension of the rule will eliminate the limbo status of the second stage resulting from the *Kuskie* decision i.e., the revival for possible abatement of a case that is not subject to abatement by the simple process of filing a petition for review with the Court of Military Appeals. Also eliminated is the administrative task necessitated to determine pendency of an appeal based on dates of death, notice, and court opinions, thus preventing disposition of a case on fortuity of death on the right day. The mandatory nature of appeals under Articles 66(b) and 67(b)(1) and (2), UCMJ, preserve the possibility of abatement for some but not all accused. Equal treatment is a goal of the law and equality in abatement should not depend on fortuity, particularly as Article 67(b)(2), UCMJ, may be applied.

I recognize extension of the rule will mean every case will be abated on the death of the accused at any time prior to the termination of the normal appellate process. This is not just consistent with, but is in accordance with present practices and the nature of military service. This does not require or even suggest that abatement should apply to extraordinary appellate procedures such as requests for new trials or petitions for extraordinary relief. As such actions are initiated on individual circumstances, a decision on abatement should be made based on those individualized circumstances.