UNITED STATES

v.

Sergeant Samuel L. TUCKER, FR 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 United States Air Force.

ACM 23896.

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 Nov. 1982.

Decided 19 Oct. 1983.

**520**

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel William H. Seckinger, USAFR.

Before KASTL, RAICHLE and SNYDER, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

In a single assignment of error, Sergeant Tucker asserts that:

THE ACCUSED WAS DENIED A FAIR HEARING ON SENTENCE WHEN, SHORTLY BEFORE HIS TRIAL, HIS COMMANDING OFFICER ADMONISHED OTHER MEMBERS OF HIS UNIT TO DISASSOCIATE THEMSELVES FROM THE ACCUSED AND THREE OTHER INDIVIDUALS WHO WERE ABOUT TO BE TRIED BY COURTS–MARTIAL FOR DRUG OFFENSES, AND FURTHER DIRECTED THAT ANY SENIOR NCOs CONSULT COMMAND OFFICIALS BEFORE TESTIFYING FOR THE DEFENSE IN ANY OF THE PENDING PROCEEDINGS.

This allegation raises most serious questions as to the integrity of the court-martial process.

An extended development of the facts is necessary to set the matter into context.

### Facts

Prior to the pleas,[1] the defense made "a motion to abate or a motion to dismiss the charges," based upon the contention that Colonel John O. Kiser, the accused's squadron commander and the accuser in the case, had violated M.C.M.1969 (Rev.), para. 38 and prevented the accused from having a fair trial by remarks made at two assemblages of members of his squadron.

---

**1.** The accused, upon pleas of guilty, was found guilty by a general court-martial of possessing and transferring both fenethylline and cocaine, in violation of Articles 92 and 134, U.C.M.J., 10 U.S.C. §§ 892, 934. He was sentenced to a dishonorable discharge, confinement at hard labor for one year, total forfeitures, and reduction to airman basic. The convening authority disapproved the offenses relating to fenethylline. The Staff Judge Advocate's Review stated that

Colonel Kiser was called as a witness to testify. At a mandated squadron commander's call approximately two and one half weeks before trial, he had mentioned four individuals by name, including the accused, who were then scheduled for court-martial and had advised the members of his squadron to "disassociate themselves from these people." Colonel Kiser explained that his intent and meaning was to advise his squadron personnel "that it would probably be in their best interest to disassociate themselves in that sometimes you get implicated into situations just by your proximity to the individual." According to Colonel Kiser, this cautionary advice was not overly stressed. As he described it, the commander's call lasted an hour or more and covered a variety of subjects, including alcohol and drug involvements. The disassociation statement constituted probably less than a minute of the entire agenda.

The other squadron assemblage was a "Top Four" Commander's meeting. It occurred after a ranking noncommissioned officer of the squadron, one Chief Master Sergeant Berkebile, had testified in a case involving an accused by the name of Schott. (It is judicially noted that an accused by the name of Senior Airman Robert A. Schott was convicted at a special court-martial on 15 January 1982 of a series of hashish offenses and received an approved sentence to thirty days' confinement at hard labor, sixty days' hard labor without confinement, forfeiture of $500 per month for six months and a reprimand).

Colonel Kiser made clear that he had found nothing amiss in the fact that Sergeant Berkebile had been a character witness for Schott and described him as an excellent worker, but the Colonel also felt that in testifying Berkebile may not have sufficiently considered "the whole man concept." Consequently, Colonel Kiser instructed his ranking noncommissioned officers that before giving testimony in court—

---

the accused was not unduly prejudiced by the actions and remarks of the squadron commander/accuser but, even assuming undue prejudice, sentence reassessment would resolve the matter. Thereupon the convening authority approved a sentence extending to a bad conduct discharge, confinement at hard labor for nine months, total forfeitures, and reduction to airman basic.

martial cases they would act advisedly to first see the first sergeant, the squadron section commander or himself, so as to become more knowledgeable in such connection. Colonel Kiser emphasized that it was never his intention to inhibit anyone's testimony or to take any adverse action against anyone for testifying and, further, that he later made this clear in a specific statement to his squadron personnel. At the same time, the Colonel also granted that he was of the opinion that a witness who testified that the Air Force should retain an accused who had been convicted of transferring cocaine would not have properly considered "the whole man concept."

The record is not very clear as to the matter, but does suggest that a third meeting was held in which Colonel Kiser clarified his earlier statements; in essence, he apparently sought to assure everyone that they could testify freely.

The defense counsel admitted that he could name no specific witness who had been deterred in testifying for this accused by reason of Colonel Kiser's remarks. However, it was the defense contention that: (a) the cumulative effect of the Colonel's meetings and statements could have had so chilling an effect that no witness for the accused would have voluntarily come forward to testify in his behalf; and (b) it was up to the Government to prove that this was not the case. It was on such basis that the defense moved that the court either dismiss the charges or "abate these proceedings until the Government can come up with some other means of curing this error."

After hearing evidence and argument on the issue, the military judge made a number of specific findings, which are best expressed in his own words, as follows:

I find, by a preponderance of the evidence, that Colonel Kiser, the accused's commander, addressed a Commander's Call wherein the pending court-martial of Sergeant Tucker and others was discussed. I find that during that meeting he urged all in attendance to stay away from those people, "to disassociate yourselves from those people." I find that Colonel Kiser also addressed a meeting of top enlisted grades and exhorted them to be knowledgeable before testifying in courts-martial. *I find that Colonel Kiser held a Commander's Call, wherein he totally disclaimed any intention to keep persons from testifying in a court-martial proceeding.* I find that while it may have been preferable that Colonel Kiser as commander not mention accused by name or that he get into the nature of the cases; nevertheless, I find his admonishment for his people to disassociate themselves from persons pending trial is not a violation of paragraph 38 of the MCM. *I further find that his remarks to Commander's Calls and top NCOs were not intended as an attempt to discourage potential witnesses from testifying nor was there any intent to interfere with this court-martial proceeding,* that is, the one we're involved in today. I find that *considering the brevity of his remarks to Commander's Call no reasonable person could conclude that the object was intimidation.* I find that Colonel Kiser's advice to top NCOs to be knowledgeable was also *not intended to stifle testimony of potential witnesses, but was legitimately concerned with the witnesses being aware of all sides of a question.* I find that NCOs so addressed could not reasonably conclude that they were being told not to testify. I find also that any *doubt as to possible intimidation was removed by the meeting held wherein Colonel Kiser disclaimed any intent to discourage persons from testifying in any court-martial.* In view of the above findings and considering that no person has been identified for this court as being potential witnesses in the trial against Sergeant Tucker, no potential witnesses who have been labeled as reluctant to testify considering these matters, I find no prejudice to the accused, Sergeant Tucker. Accordingly, the defense motion to abate the proceedings or to dismiss the charges is denied (emphasis added).

The defense did, in fact, produce two strong character witnesses for the accused in extenuation and mitigation during the presentencing proceedings—the one, his officer supervisor, the other, his noncommissioned officer supervisor—who both gave highly favorable testimony for the accused; neither seemed to have been adversely influenced in their testimony by reason of the statements made by Colonel Kiser.

## Analysis

We have no doubt that Colonel Kiser acted as a loyal, highly-motivated commander doing what he felt necessary to counsel his personnel. That, however, does not necessarily make it permissible activity. *See United States v. Charles,* 15 M.J. 509 (A.F.C.M.R.1982); *United States v. Estes,* 28 C.M.R. 501 (A.B.R.1959). Furthermore, the fact that the defense failed to show that any particular witness was "chilled" is not necessarily determinative of the issue. *See United States v. Rosser,* 6 M.J. 267, 270–271 (C.M.A.1979). Neither does Colonel Kiser's recantation necessarily resolve matters. *United States v. Howard,* 23 U.S.C.M.A. 187, 48 C.M.R. 939, 944 (1974).

Assessing the above precedents, we do not find the record of trial in the present case sufficiently complete to allay our concerns.[2] Accordingly, we believe it appropriate that a limited hearing be set for the purpose of developing this topic to the fullest possible extent. *See United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967); *United States v. Fairchild,* 14 M.J. 918 (A.F.C.M.R.1982). The case is therefore returned to The Judge Advocate General of the Air Force for such action as is required to assure an impartial hearing. The hearing may be ordered by any convening authority designated by The Judge Advocate General for such purpose and will be conducted before any military judge detailed in the convening order. Both the accused and government will be represented by counsel. Copies of any relevant documents will be considered and attached. Witnesses will be called. At the conclusion of the hearing, the military judge will make specific findings of fact as to what transpired, including—but not limited to—answers to the following series of questions:

## Questions to be Addressed

1. The "Top Four" Meeting. Precisely when did this take place *vis-a-vis* the accused's trial? Were other subjects covered? How long did this meeting last? Did Colonel Kiser actually use the term "the whole man concept" there, and did he further define it? The record states that Chief Master Sergeant Berkebile volunteered at this meeting that he was the individual who had testified earlier for Senior Airman Schott. (R. 17) What did Berkebile say, precisely? What communications, if any, passed between Sergeant Berkebile and Colonel Kiser prior to and during the "Top Four" meeting? Was any criticism voiced by Colonel Kiser of Sergeant Berkebile having so testified?

2. The "Clarification." What was the date and timing of the clarification by Colonel Kiser that no one should be inhibited in testifying? Who, if anyone, directed such clarification? Was this a regular commander's call? Who attended? Whose idea was it to convene such a call? Was testifying in a court-martial the only subject? Was any superior to Colonel Kiser present? Precisely what was said by Colonel Kiser? Are Colonel Kiser's memory jogger notes (R. 13) still available?

3. Overall questions. Regarding courts-martial, were there any questions from the listeners at any of the meetings Colonel Kiser held with his personnel? Is there evidence any witness in any of the series of court-martial cases (R. 13) felt "chilled"? What was Colonel Kiser's precise intent in making his original remarks? Did he intend that anyone testifying would be disinclined to recommend retention of drug offenders in the Air Force? Did he intend that if any senior noncommissioned officer harbored the view that these four accused should be retained in the Air Force, that such view should be modified, if at all possible, prior to their giving testimony? What was the precise role to be played by the first sergeant and the squadron section commander in counselling any prospective witness? What did the first sergeant and squadron section commander believe their function to be in such possible counselling?

A verbatim record will be made of the proceedings. Following proper authentication, the record will be submitted to this Court for further review of the case.

RAICHLE and SNYDER, Judges, concur.

---

[2] While we may take judicial notice of the *results* of other trials, we may not go outside the four corners of the instant case and scan those other courts-martial to buttress facts not fully developed here. *See generally United States v. Rollins,* 7 M.J. 125 (C.M.A.1979); *United States v. Lovett,* 7 U.S.C.M.A. 704, 23 C.M.R. 168, 172 (1957). *See also* Adamkewicz, "Appellate Consideration of Matters Outside the Record of Trial," 32 Mil.L.Rev. 1, 16–17 (April 1966).