UNITED STATES, Appellee,

v.

Specialist Four Danny K. HARRIS, 430–21–4768, United States Army, Appellant.

CM 449120.

U.S. Army Court of Military Review.

22 April 1987.

---

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Major Dale K. Marvin, JAGC, Captain Floyd T. Curry, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Richard Parker, JAGC (on brief).

Before DeFORD, WILLIAMS, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

WILLIAMS, Judge:

Appellant argues for the first time on appeal his general court-martial was without jurisdiction to try him.[1] This contention is based on appellant's belief that the effect of the trial judge's order, "These proceedings are abated.", was to bring the proceedings to an end, terminate the court-martial's jurisdiction over the offense and the appellant, and require rereferral of the charges by the convening authority to another court-martial before trial could proceed.

The events which led to the trial judge's order began on 8 May 1986, the day before appellant's scheduled trial, when he petitioned the government to produce as a witness one of his co-accuseds who had not yet been tried for the same offenses. The following day, appellant requested that the convening authority give the untried coaccused testimonial immunity to enable him to testify at appellant's trial. The convening authority denied the request.

At an Article 39(a), UCMJ, 10 U.S.C. § 839(a), pretrial session held on 10 May 1986, appellant renewed his request before the trial judge. After hearing argument, the trial judge ruled, pursuant to Manual for Courts-Martial, United States, 1984 [hereinafter cited as M.C.M., 1984], Rule For Courts-Martial 704(e) [hereinafter cited as R.C.M.],[2] that:

(1) If called upon to testify, the requested witness would invoke his right against self-incrimination to the extent permitted by law; and (2) his proffered testimony was of essential importance to both the defense case and a fair trial.

---

1. Tried by a military judge sitting as a general court-martial, appellant was found guilty, pursuant to his pleas, of violation of Articles 81 (conspiracy to commit rape) and 120 (rape), Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 920 (1982) [hereinafter cited as UCMJ]. His sentence, approved by the convening authority, included a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E–1.

2. R.C.M. 704(e) provides:
   Unless limited by superior competent authority, the decision whether to grant immunity is a matter within the sole discretion of the appropriate general courtmartial convening authority. However, if a defense request to immunize a witness has been denied, the military judge may, upon motion by the defense, grant appropriate relief directing that either an appropriate convening authority grant testimonial immunity to a defense witness or, as to the affected charges and specifications, the proceedings against the accused be abated, upon findings that:
   (1) The witness' testimony would be of such central importance to the defense that it is essential to a fair trial; and
   (2) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify.

After so ruling, the trial judge asked the trial counsel, "What's the government inclined to do....?" The trial counsel replied, "Abate, Your Honor." The trial judge then ordered, "Very well. These proceedings are abated."

At issue, obviously, is the meaning of the term "abate" as it was used by the trial judge in this case. Appellant's contentions in this regard can be summarized as follows: "Abate" within the meaning of R.C.M. 704(e) is not defined in the M.C.M., 1984,[3] and is a term of art which, in the military criminal law context, connotes the complete termination of a judicial proceeding.[4] Further, the trial judge can be presumed to have known of "abate's" connotation of finality at the time of the trial. Therefore, it can be presumed that, when the military judge used this term of art and "abated" these proceedings, he did so with full knowledge of the term's meaning and effect. Thus, appellant concludes, the trial judge terminated these proceedings when he abated them. Since rereferral of the charges to another court-martial did not occur, appellant argues all actions by the court after abatement are void because they occurred after the court-martial was divested of jurisdiction.

While it is clear to us, in appropriate circumstances, the term can have the meaning and effect contended by appellant, we also find ample support for the argument that military legal authorities have used the terms "abate" and "abatement" to mean an indefinite continuance or stay of proceedings, continuation of which is normally conditioned on the occurrence of a specific event. See, e.g., United States v. Zayas, 21 M.J. 281 (C.M.A.1985) (granted issue: whether the trial judge erred in denying appellant's motion to abate the proceedings pending a grant of testimonial immunity for a witness); United States v. James, 22 M.J. 929 (N.M.C.M.R.1986) (trial judge denied appellant's motion for appropriate relief in which he requested an abatement of the proceedings until an appropriate convening authority granted immunity to the witness); United States v. Tucker, 17 M.J. 519, 520 (A.F.C.M.R.1983) (appellant styled his trial motion as one to, alternatively, abate the proceedings or dismiss the charges); United States v. Delaney, 43 C.M.R. 766, 774 (A.C.M.R.1971) (appellate government counsel urged that ap-

---

3. Appellant does cite various dictionary definitions of the term: Black's Law Dictionary 4 (5th ed. 1979) ("To throw down, to beat down, destroy, quash, to do away with, to nullify, to make void.") See also Ballentine's Law Dictionary, 2 (3d ed. 1969) (To quash, beat down or destroy, as in the case of a nuisance or an objectionable writ."); Dahl & Whelan, The Military Law Dictionary, 7 (1960) ("To terminate; to decrease. Quash, beat down, or destroy."); Webster's Third New International Dictionary, 2 (1981) ("To bring entirely down.")

The related term, "Abatement of Action," is defined as "an entire overthrow or destruction of the suit so that it is quashed and ended." Black's at 4; "The entire overthrow or destruction of an action.... A suit at law, when it abates as at common law, is absolutely dead; any further enforcement of the cause of action necessitates the bringing of a new suit." Ballentine's at 2.

4. Although appellant found no military case which defines "abate," he cites several in support of this contention in which the word "abate" or "abatement" is used. These cases fall into essentially three categories. The first line of cases discusses abatement of proceedings where the appellant has died. See, e.g. United States v. Roettger, 17 M.J. 453 (C.M.A.1984); rev'g 16 M.J. 536 (A.C.M.R.1983); United States v. Kuskie, 11 M.J. 253 (A.C.M.R.1981); United States v. Marcott; 8 M.J. 531 (A.C.M.R.1979). The second line of cases deals with a discussion of whether appellate proceedings are abated by separation of appellant from the service after trial. See, e.g. United States v. Logeman, 48 C.M.R. 10 (C.M.A.1973); United States v. Gwaltney, 43 C.M.R. 328 (C.M.A.1971); aff'g 43 C.M.R. 536 (A.C.M.R.1970); United States v. Bull, 31 C.M.R. 100 (C.M.A.1961); United States v. Loughery, 30 C.M.R. 260 (C.M.A.1961); United States v. Woods, 21 M.J. 856 (A.C.M.R.1986); and United States v. Cunnally, 50 C.M.R. 343 (A.C.M.R.1975). The third line of cases involves situations, similar to the instant case, where the government is obliged to produce a witness or abate the proceedings. United States v. Williams, 3 M.J. 239 (C.M.A.1977); United States v. Yoakum, 14 M.J. 959 (A.C.M.R.1982); United States v. Seek, 13 M.J. 946 (A.F.C.M.R.1982); and United States v. Scott, 3 M.J. 1111 (N.C.M.R. 1977), rev'd, 5 M.J. 431 (C.M.A.1978). In each of these instances, appellant argues, the courts have used the word in context to mean a final termination of the proceedings.

pellant's motion to dismiss the charges be denied and the proceedings be abated until appellant was mentally capable of cooperating in his defense); *United States v. Kauffman*, 33 C.M.R. 748, 795 (A.F.B.R. 1963) (motion to abate distinguished from motion to dismiss); *United States v. Rubenstein*, 19 C.M.R. 709, 800–801 (A.F.B.R. 1955) (appellant asserted that his due process rights were violated in that his arrest and confinement by military authorities prevented him from obtaining relief in the form of a Federal District Court determination that the court-martial lacked jurisdiction or, "at least," an abatement of the court-martial proceedings against him); *United States v. Moore*, 14 C.M.R. 658, 666 (AFBR 1953) (determination of accused's mental incompetency at the time of trial results only in an abatement or continuance of the trial). Thus, we find any assertion that "abate" is always used to connote a complete termination of the proceedings is without merit. *See also United States v. Redding*, 11 M.J. 100 (C.M.A.1981).[5]

We also find "abate's" meaning in the context of R.C.M. 704(e) is entirely consistent with the "continuance" position. According to the drafters' analysis, M.C.M., 1984, Analysis of R.C.M. 704, App. 21, A21–35, subsection (e) of R.C.M. 704 is based upon the Court of Military Appeals' decision in *United States v. Villines*, 13 M.J. 46 (C.M.A.1982). In *Villines*, the appellant requested that the convening authority grant testimonial immunity to two witnesses to enable them to testify in his case. The convening authority denied the requests for immunity. At trial, the defense requested that the military judge or-

der testimonial immunity for the two witnesses. The judge declined to do so but ruled, with respect to the first witness, that if he were called to testify and invoked his privilege against self-incrimination, the judge would abate the proceedings until the witness was provided with a grant of immunity. He refused to so rule with respect to the second witness. Thereafter, the convening authority immunized the first witness but again denied the defense request in the case of the second witness.

Following the Navy Court's determination, *United States v. Villines*, 9 M.J. 807 (N.C.M.R.1980), that the trial judge did not err in refusing to require immunity for the second witness, the Acting Judge Advocate General of the Navy certified the following question for review: "Was the United States Navy Court of Military Review correct when it held that ... the military judge correctly declined to either direct the testimonial immunization of ... [the second witness] ... or ... abate the proceedings until a grant of testimonial immunity had been issued to ... [the second witness] ...?" *United States v. Villines*, 13 M.J. 46, 51 (C.M.A.1982). The Court of Military Appeals' response was a plurality decision wherein each of the judges suggested a methodology for dealing with defense requests for witness immunity. None of the judges opined dismissal or termination of the proceedings was an appropriate remedy for refusal of the government to immunize a witness at the request of the accused. In fact, Judge Cook stated:

[I] am certain that the trial judge cannot dismiss the charges for a refusal of the Government to immunize the witness at

---

5. The *Redding* court addressed the narrow procedural question, "whether final action by a Court of Military Review on a petition for extraordinary relief from a trial court ruling constitutes a 'case' reviewed within the meaning of Article 65(b)(2)[UCMJ] and qualifies the proceedings for certification to [the Court of Military Appeals] by the Judge Advocate General." *United States v. Redding*, 11 M.J. at 104. The substantive setting for the issue involved a trial judge's interlocutory order of abatement which had become a deadlock in the trial. The order, "removing the case 'from the trial docket until further notice of the Court,'" *Id.* at 109, had

been issued by the trial judge in response to a defense motion for appropriate relief where the relief requested was "that further proceedings be abated until the requested military lawyer was 'made available,' or, alternatively, that the charges be dismissed." *Id.* at 107. The continuance lasted over a year. As pointed out by the dissent, the trial judge's order was the equivalent of a stay of proceedings, the continuation of which was expressly conditioned on the government's production of the accused's individually requested military counsel. *United States v. Redding*, 11 M.J. at 116–117 (Fletcher, J., dissenting).

accused's request [citations omitted]. However, other actions short of dismissal are within the judge's authority; one such action is to *continue* the case to such time as the circumstances indicate are appropriate.

*Id.* at 58 (Cook, J., concurring) (emphasis added).

It appears to us, therefore, that R.C.M. 704(e) is an embellished version of the methodology used by the trial judge in *Villines.* Thus, it seems to us the drafters used the term "abate" in the same manner as that trial judge did, that is, as a continuance. Since the trial judge in appellant's case was ruling pursuant to R.C.M. 704(e), we believe he also meant a continuance when he abated the proceedings. We find further support for that belief in his statement that:

> The decision to me is whether or not this witness is critical to your case. Whether or not I should abate the proceedings *until he is made available.*

(Emphasis added.)

The trial judge's abatement of the proceedings did nothing more than temporarily forestall them and condition their continuance on the availability of the coaccused/witness. His ruling was not a complete termination of the proceedings against appellant, nor was it tantamount to a final disposition of the case. Rather, it was a temporary suspension of the proceedings which would resume when the coaccused/witness became available to testify at appellant's trial.

The soundness of this assertion is buttressed by the record of further proceedings after the trial judge's order. On 27 May 1986, the parties to appellant's case appeared again at an Article 39(a), UCMJ, session. The trial judge outlined his involvement in the cases of the four co-accuseds stating, *inter alia,* the requested coaccused/witness' contested case "was completed" on 15 May. This occurrence presumably brought an end to the government's reluctance to grant him immunity in the case *sub judice,* and, thus, rendered him "available" to testify at appellant's

trial. In these circumstances, the government was, under the terms of the order of abatement, free to continue its prosecution of the appellant, which it did. Since trial defense counsel made no objection to resuming the proceedings, it seems to us he shared the trial judge's understanding of the order of abatement. Thereafter, the trial judge granted appellant's request for trial by military judge alone, received his pleas to the charges and specifications, found him guilty in accordance with his pleas, and sentenced him.

In summary, we are satisfied the term "abate" has taken on an additional meaning in the military criminal law context in appropriate circumstances—an indefinite continuance or stay of proceedings, continuation of which is normally conditioned on the occurrence of a specific event. We are also satisfied the term was used in that sense in this case. There was, therefore, no lapse in the jurisdiction of appellant's court-martial.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge DeFORD and Judge KENNETT concur.